EXHIBIT 1

Person Filing this Document: ABRAHAM L WOODS III

*(Name)*

Street Address: 106 BOSTON AVENUE, SUITE 103

City, State, Zip Code:  ALTAMONTE SPRINGS, FLORIDA 32701

Telephone:  407 921-8708

Email Address: WOODSABRAHAM@GMAIL.COM



Filed and Attested by the
Office of Judicial Records
18 JUL 2024 03:44 pm
S. GILLIAM

## NOTICE TO THE PLAINTIFF:

> *If a New Matter is included in this Answer, you are hereby notified to file a written response to Defendant's New Matter to the New Matter within 20 (twenty) days from service hereof or a judgment may be entered against you.*

## IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## TRIAL DIVISION - CIVIL

Meridian Equipment Finance, LLC

                              Case Number  240700279
                   Plaintiff

            v.

Abraham L. Woods III

                   Defendant

## DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant  Abraham L Woods III                          hereby files this Answer

                          *(Name)*

to the Plaintiff's Complaint and avers as follows to the corresponding numbered paragraphs
of Plaintiff's Complaint as follows:

*This court form is intended for non-attorneys only*

EXHIBIT 1

## GENERAL AVERMENTS

*(Review and respond to each numbered paragraph in Plaintiff's Complaint starting with Paragraph #1. For each Paragraph, check the response that best applies to you and explain your answer choice when prompted. If a Paragraph is "Admitted" it means that you know that this information is true and correct. If a Paragraph is "Denied" it means that you know this information is **not** true or correct. If a Paragraph is "Admitted and denied in part" it means that you know that some of the information is true and correct and that some of the information is not true or correct. If a Paragraph is "Denied because you do not have enough information" it means that the Paragraph **could be true or could be not true**, but you do not have enough information to know.")*

*If you have evidence or proof that supports any of your responses, you can attach it to the end of this document.)*

1. [✔] Admitted.      [ ] Admitted and denied in part.      [ ] Denied.

   [ ] Denied because I do not have enough knowledge or information to adequately respond to this.

*(Explain the reason(s) why this answer was chosen. If you chose "Admitted" you do not need to provide a reason.)*

2. [ ] Admitted.      [ ] Admitted and denied in part.      [✔] Denied.

   [ ] Denied because I do not have enough knowledge or information to adequately respond to this.

*(Explain the reason(s) why this answer was chosen. If you chose "Admitted" you do not need to provide a reason.)*

THIS APPLICATION WAS COMPLETED BY KRIS HUSTON, SALES DIRECTOR OF BTL INDUSTRIES, DIRECTLY WITH THE LOAN OFFICER OF MERIDIAN BANK WITHOUT MY INPUT. INCORRECT INFORMATION.

*This court form is intended for non-attorneys only*

Case ID: 240700279

**EXHIBIT 1**

3. ☐ Admitted.     ☐ Admitted and denied in part.     ☑ Denied.

☐ Denied because I do not have enough knowledge or information to adequately respond to this.

*(Explain the reason(s) why this answer was chosen. If you chose "Admitted" you do not need to provide a reason.)*

THIS APPLICATION WAS COMPLETED BY KRIS HUSTON, SALES DIRECTOR OF BTL INDUSTRIES WITHOUT MY INPUT. 1670 GLEN ETHEL LANE, LONGWOOD, FLORIDA IS THE LOCATION OF MY RECORD STORAGE AND OFFICE EQUIPMENT STORAGE SINCE 2003.

4. ☐ Admitted.     ☐ Admitted and denied in part.     ☐ Denied.

☑ Denied because I do not have enough knowledge or information to adequately respond to this.

*(Explain the reason(s) why this answer was chosen. If you chose "Admitted" you do not need to provide a reason.)*

5. ☐ Admitted.     ☐ Admitted and denied in part.     ☑ Denied.

☐ Denied because I do not have enough knowledge or information to adequately respond to this.

*(Explain the reason(s) why this answer was chosen. If you chose "Admitted" you do not need to provide a reason.)*

THIS ISN'T A LEGAL ENTITY OWNED BY ABRAHAM L WOODS III

*This court form is intended for non-attorneys only*

EXHIBIT 1

6. ☐ Admitted.          ☐ Admitted and denied in part.          ☐ Denied.

☑ Denied because I do not have enough knowledge or information to adequately respond to this.

*(Explain the reason(s) why this answer was chosen.  If you chose "Admitted" you do not need to provide a reason.)*

7. ☐ Admitted.          ☐ Admitted and denied in part.          ☑ Denied.

☐ Denied because I do not have enough knowledge or information to adequately respond to this.

*(Explain the reason(s) why this answer was chosen.  If you chose "Admitted" you do not need to provide a reason.)*

DEFENDANT WAS GIVEN INFORMATION SHOWING THE VALUE OF THIS EQUIPMENT WAS LESS THAN $5000. DEFENDANT ASKED FOR THE COPY OF CONTRACT AND THE ACTUEAL VALUATION OF THE EQUIPMENT OR THE PRESENT INSURANCE VALUATION AS REQUESTED.

8. ☐ Admitted.          ☐ Admitted and denied in part.          ☐ Denied.

☑ Denied because I do not have enough knowledge or information to adequately respond to this.

*(Explain the reason(s) why this answer was chosen.  If you chose "Admitted" you do not need to provide a reason.)*

Answer 07/11/24    Case ID: 240700279

**EXHIBIT 1**

9. ☐ Admitted.    ☐ Admitted and denied in part.    ☐ Denied.
☑ Denied because I do not have enough knowledge or information to adequately respond to this.

*(Explain the reason(s) why this answer was chosen. If you chose "Admitted" you do not need to provide a reason.)*

10. ☐ Admitted.    ☐ Admitted and denied in part.    ☐ Denied.
☑ Denied because I do not have enough knowledge or information to adequately respond to this.

*(Explain the reason(s) why this answer was chosen. If you chose "Admitted" you do not need to provide a reason.)*

11. ☐ Admitted.    ☐ Admitted and denied in part.    ☐ Denied.
☑ Denied because I do not have enough knowledge or information to adequately respond to this.

*(Explain the reason(s) why this answer was chosen. If you chose "Admitted" you do not need to provide a reason.)*

*This court form is intended for non-attorneys only*

Case ID: 240700279

**EXHIBIT 1**

12. ☐ Admitted.            ☐ Admitted and denied in part.            ☐ Denied.

   ☑ Denied because I do not have enough knowledge or information to adequately
   respond to this.

*(Explain the reason(s) why this answer was chosen.  If you chose "Admitted" you do not
need to provide a reason.)*

13. ☐ Admitted.            ☐ Admitted and denied in part.            ☐ Denied.

   ☑ Denied because I do not have enough knowledge or information to adequately
   respond to this.

*(Explain the reason(s) why this answer was chosen.  If you chose "Admitted" you do not
need to provide a reason.)*

14. ☐ Admitted.            ☐ Admitted and denied in part.            ☐ Denied.

   ☑ Denied because I do not have enough knowledge or information to adequately
   respond to this.

*(Explain the reason(s) why this answer was chosen.  If you chose "Admitted" you do not
need to provide a reason.)*

*This court form is intended for non-attorneys only*

**EXHIBIT 1**

15. ☐ Admitted.          ☐ Admitted and denied in part.          ☐ Denied.

☑ Denied because I do not have enough knowledge or information to adequately respond to this.

*(Explain the reason(s) why this answer was chosen. If you chose "Admitted" you do not need to provide a reason.)*

16. ☐ Admitted.          ☐ Admitted and denied in part.          ☐ Denied.

☑ Denied because I do not have enough knowledge or information to adequately respond to this.

*(Explain the reason(s) why this answer was chosen. If you chose "Admitted" you do not need to provide a reason.)*

17. ☐ Admitted.          ☐ Admitted and denied in part.          ☐ Denied.

☑ Denied because I do not have enough knowledge or information to adequately respond to this.

*(Explain the reason(s) why this answer was chosen. If you chose "Admitted" you do not need to provide a reason.)*
THIS COMPLAINT WAS DELIVERED TO ME BY REGULAR MAIL ON JULY 15, 2024 WITH THESE ALLEGATIONS.

**If there are more than 17 paragraphs in the complaint, you can obtain additional pages from the Civil Filing Center.**

*This court form is intended for non-attorneys only*

Case ID: 240700279

EXHIBIT 1

## NEW MATTER

*(If you have additional facts that are relevant to this case that you wish to tell the Court, you can write them in the space below. If you need more space, you can add additional pages to this document.)*

TWO OF MY PATIENTS PRESENTED THIS MATTER OF OVERCHARGING THEM FOR THIS SERVICE AFTER THEY WERE ABLE TO PURCHASE THE SAME EQUIPMENT FOR LESS THAN $5000. IN THE STATE OF FLORIDA A PHYSICIAN CAN LOOSE HIS MEDICAL LICENSE FOR ENGAGING IN A TRICK OR SCHEME WITH THE CITIZENS OF FLORIDA. I NEEDED TRANPARENCY TO PROTECT MY LICENSE. UNFORTUANTELY MERIDIAN WOULDN'T PROVIDE THIS INFORMATION. I ASKED MERIDIAN ABOUT TRUTH IN LENDING , BUT THEIR ANSWER IS TO ENFORCE A LEGAL CONTRACT WHICH THEY OBTAIN IN CLOSE PARTICIPATION WITH BTL INDUSTRIES TO MAKE PROFIT IN THE MEDICAL INDUSTRY ON STRUGGLING MEDICAL PRACTITIONERS. MERIDIAN LOAN OFFICIERS NEVER RESPECTED ME AS A CLIENT TO INTERVIEW ME AND EXPLAIN THE TERMS OF THIS LOAN. ALL INFORMATION WAS GIVEN TO ME BY THE SALES DIRECTOR AT BTL INDUSTRIES. HE SIMPLY TOLD ME THE UP FRONT INTEREST TO BE PAID AND THE MONTHLY PAYMENTS AND TO SIGN THE DOCU SIGN AND THE COMPANY WOULD SEND ME A CONTRACT TO READ. MY FIRST COPY OF THE CONTRACT WAS THIS YEAR.

**WHEREFORE,** the Defendant hereby demands judgment in their favor and against the Plaintiff.

Date: JULY 16, 2024

By: _____
*Signature*

ABRAHAM L WOODS III
*Print Name*

106 BOSTON AVE, SUITE 103
*Street Address*

ALTAMONTE SPRINGS, FLORIDA 32701
*City, State, Zip Code*

*This court form is intended for non-attorneys only*

EXHIBIT 1

## **<u>VERIFICATION</u>**

I, ABRAHAM L WOODS III                    , the ☑ Defendant ☐ Other
   *(Name)*

in this case, verify that the facts set forth in the foregoing are true and correct to the best of

my information, knowledge and belief.

   I understand that the statements contained herein are subject to the Penalties of 18

Pa.C.S.A., Section 4904 relating to unsworn falsification to authorities.

Date: JULY 16, 2024

ABRAHAM L WOODS III

*(Print Name)*

_____
                    *(Signature)*

*This court form is intended for non-attorneys only*

Case ID: 240700279

EXHIBIT 1

## **CERTIFICATION OF SERVICE**

**I,** ABRAHAM L WOODS III _____, **HEREBY CERTIFY** that on JULY 16, 2024 _____, a true and correct copy of the attached Answer, was
_(Date)_

or will be served to the following individuals at the addresses listed below:

Name: ANDREW P. CHIGOUNIS, ESQUIRE-312214 _____

Address: 1700 MARKET STREET, SUITE 1005 _____

Address: PHILADELPHIA, PA 19103 _____

City, State, Zip Code: _____

Name: ROBERT L. SALDUTTI, ESQUIRE-63867 _____

Address: 1700 MARKET STREET _____

Address: SUITE 1005 _____

City, State, Zip Code: PHILADELPHIA, PA 19103 _____

Name: _____

Address: _____

Address: _____

City, State, Zip Code: _____

The attached Motion/Petition was or will be served to these individuals by: _(Check all that apply)_

☑ **U.S. Mail**    ☐ **Fax**    ☐ **Hand Delivery**    ☐ **Other** _____

ABRAHAM L WOODS III _____
_(Print Name)_

JULY 16, 2024 _____
_(Date)_

_(Signature)_

_This court form is intended for non-attorneys only_

EXHIBIT 1

SALDUTTI LAW GROUP
Andrew P. Chigounis, Esquire-312214
Robert L. Saldutti, Esquire-63867
1700 Market Street, Suite 1005
Philadelphia, PA 19103
(610) 994-1137
Attorney for Plaintiff/49406

| | |
|---|---|
| MERIDIAN EQUIPMENT FINANCE LLC<br><br>Plaintiff<br><br>v.<br><br>REJUVENATION TREATMENT CENTER LLC D/B/A CENTER FOR UROLOGY AND ABRAHAM L. WOODS III<br><br>Defendants. | PHILADELPHIA COUNTY COURT OF COMMON PLEAS<br><br>Case No.<br><br>CIVIL ACTION |

## CIVIL ACTION COMPLAINT

1.      Plaintiff, Meridian Equipment Finance LLC, is a company with its principal place of business at 367 Eagleview Blvd., Exton, PA 19341.

2.      Defendant, Rejuvenation Treatment Center LLC d/b/a Center for Urology, is a company with its principal place of business at 106 Boston Ave., Ste. 103, Altamonte Springs, FL 32701-4711.

3.      Defendant, Abraham L. Woods III, is an individual who resides at 1670 Glen Ethel Ln., Longwood, FL 32779-2769.

4.      At all times relevant, the Plaintiff was in the business of providing leasing and financial services, including but not limited to the agreement/lease signed by Defendants, hereinafter more fully described.

## COUNT I
## MONEY JUDGMENT

5.      On or about March 2, 2022, Defendants entered into Equipment Finance Agreement (hereinafter "Agreement") for financing of certain equipment.   Defendant,

EXHIBIT 1

Rejuvenation Treatment Center LLC d/b/a Center for Urology, executed the Agreement as borrower along with a personal guarantee of the Agreement.  See Agreement attached hereto as Exhibit "A"

     6.     The Agreement requires prompt and timely payments in accordance with the provisions of the Agreement.  The Agreement allows for the acceleration of payments upon default. Defendants have defaulted under the terms of the Agreement and there is currently due and owing from Defendants to Plaintiff the total amount of $146,910.38, plus costs as well as reasonable counsel fees and related interest and charges.

     7.     Defendants made payments, but have failed to make any further payments thereafter, and are therefore in default of the Agreement.

     8.     As a result of the default by Defendants, and pursuant to the terms of the Agreement, Plaintiff has made repeated demands upon the Defendants for the outstanding balance of the Agreement, but Defendants have refused and continue to refuse to repay this money.

     9.     Pursuant to the terms of the Agreement, Defendants are required to pay all amounts due and owing, including interest on the unpaid balance.

     10.     There is currently an unpaid balance on the accounts due from Defendants the amount of $146,910.38.

     11.     In addition to the foregoing, there is due from the Defendants, reasonable attorney's fees in the amount of $29,382.08 as well as costs, all of will continue to accrue.

     12.     The total amount due and owing is $176,292.46.

     WHEREFORE, Plaintiff, requests judgment in its favor and against the Defendants, in the amount of $146,910.38 as well as additional costs and attorney's fees that may accrue and such other and further relief as this Court may deem equitable and just.

Case ID: 240700279

Case ID: 240700279

EXHIBIT 1

## COUNT II
## REPLEVIN

13.     Plaintiff incorporate Count I, inclusive, as fully as though same were set forth here at length.

14.     Despite numerous requests from Plaintiff, that Defendants make payments due under the Agreement, the Defendants have failed to do so and Plaintiff has incurred additional expenses and attorney's fees to obtain possession of its collateral security.

15.     Defendants have refused and continues to refuse to return and/or otherwise surrender the Equipment to the Plaintiff despite repeated requests to do so.

16.     Defendants have retained possession of the Equipment with the intent to conceal same and prevent Plaintiff from exercising its lawful right to repossess the collateral security for repayment of the Agreement.

17.     Pursuant to the terms and of the Agreement and the applicable law in this Commonwealth, Plaintiff's security interest in the Equipment takes precedence over any claims of the Defendants and Plaintiff is entitled to immediate repossession of its collateral.

WHEREFORE, Plaintiff respectfully requests Judgment in its favor and against the Defendants, and/or any other individual found to be in possession of the Equipment, plus all costs of this action and reasonable attorney's fees.

Respectfully Submitted,
SALDUTTI LAW GROUP

/s/ Andrew P. Chigounis
ANDREW P. CHIGOUNIS, ESQUIRE
Attorney for Plaintiff.

Date: July 2, 2024

EXHIBIT 1

# **V E R I F I C A T I O N**

     I, Jody Wagner verify that I am the Authorized Representative for Plaintiff, Meridian Equipment Finance LLC, and am duly authorized to take this verification on its behalf; that statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

     These statements are made subject to the penalties of 18 Pa.C.S.A. §4904 relating to unsworn falsification to authorities.

                      MERIDIAN EQUIPMENT FINANCE LLC

                      JODY WAGNER

Dated: 7/1/2024

REJUVENATION TREATMENT CENTER LLC
49406

EXHIBIT 1

# EXHIBIT A

Case ID: 240700279

EXHIBIT 1



## EQUIPMENT FINANCE AGREEMENT
### NUMBER ████████

THIS EQUIPMENT FINANCE AGREEMENT (this "Agreement") is made as of _____3/2/2022_____, between MERIDIAN EQUIPMENT FINANCE LLC, its successors and assigns ("Lender"), and Rejuvenation Treatment Center LLC, its successors and permitted assigns ("Borrower").

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Agreement agree as follows:

**1. FINANCING.** Subject to the terms and conditions of this Agreement, Lender hereby agrees to advance a loan to Borrower in the original principal amount specified below (the "Financing") to finance Borrower's acquisition or refinancing of the equipment, fixtures, licensed materials and other personal property described in Schedule A attached hereto and incorporated herein, together with all replacements thereof and parts, repairs, improvements, additions, accessions and accessories now or hereafter incorporated therein and/or affixed thereto (all of such equipment, personal property and other property are individually and collectively referred to herein as the "Equipment"). Borrower hereby authorizes Lender and appoints Lender as its attorney in fact to insert the serial numbers and other identification data relating to the Equipment in this Agreement. Borrower represents that it selected the Equipment, inspected it and found it to be entirely satisfactory, and has unconditionally accepted the Equipment and its delivery.

<table>
<tr><th colspan="5">FINANCIAL TERMS</th><th colspan="2">ADVANCE PAYMENTS</th></tr>
<tr><th>PRINCIPAL AMOUNT</th><th>TERM (Months)</th><th colspan="3"># of INSTALLMENTS, PAYMENT AMOUNT, FREQUENCY</th><th colspan="2">FIRST INSTALLMENT PAYMENT</th></tr>
<tr><td rowspan="4">$171,403.30</td><td rowspan="4">63</td><td></td><td></td><td></td><td>FL Stamp Tax</td><td>$599.91</td></tr>
<tr><td>1 @</td><td>$99.00,</td><td>Advance</td><td></td><td>$99.00</td></tr>
<tr><td>2 @</td><td>$99.00,</td><td>Monthly</td><td>PROCESSING FEE</td><td>$299.00</td></tr>
<tr><td>60 @</td><td>$3,695.00,</td><td>Monthly</td><td>TOTAL DUE AT SIGNING</td><td>$997.91</td></tr>
</table>

**2. REPAYMENTS OF FINANCING.** For value received, Borrower promises to pay to the order of Lender the principal amount of the Financing with interest thereon through and including the maturity date as follows: (a) in consecutive installments in the number, frequency, and amount specified above (each, an "Installment"), and (b) any outstanding principal, interest, late charges and other amounts due and payable under this Agreement shall be paid on the maturity date. Lender may adjust the amount of each Installment up or down by no more than 10% if the actual Equipment costs are different than the amount Lender used to calculate the amount of the Installment. To accommodate Borrower's billing cycle, Borrower agrees to pay an additional partial payment, determined by dividing the amount of the monthly installment by thirty (30) and multiplying the quotient by the number of days remaining in such billing cycle. If any Installment or other amount payable hereunder is not paid within 10 days of the date such payment is due, Borrower shall pay an administrative late charge of 10% of such Installment or other amount timely paid. Such amount shall be payable in addition to all amounts payable by Borrower as a result of the exercise of any of the remedies herein provided. All installments and other amounts payable under this Agreement are to be made in immediately available funds at Lender's address below or such other place as Lender shall specify in writing and shall not be subject to any abatement, deferment, reduction, set-off, counterclaim, recoupment or defense of any kind. Borrower waives presentment, demand, protest and any notice thereof. Notwithstanding anything to the contrary contained herein, in no event shall any provision herein call for interest in excess of the maximum amount permitted by applicable law. If any interest under this Agreement exceeds the maximum amount permitted by applicable law, then any excess shall, at Lender's option, be applied to amounts due and owing hereunder or refunded to Borrower and the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowable under applicable law. In addition, on the date of this Agreement, Borrower shall pay to Lender a processing fee in the amount specified above.

**3. GRANT OF SECURITY INTEREST; TITLE.** To secure the payment and performance of all obligations, indebtedness and liabilities of Borrower to Lender under this Agreement and of any person or entity (each, a "Guarantor") that executes and delivers an agreement to guaranty the payment and performance of Borrower's obligations under this Agreement (collectively, the "Obligations"), Borrower hereby grants to Lender a first priority security interest in all of Borrower's right, title and interest in and to all of the Equipment, together with: (a) all accounts and other rights arising from or related to the use or operation of any Equipment; (b) all insurance, warranty and other claims against third parties with respect to any Equipment; (c) all software, computer programs and other intellectual property rights used in connection therewith; (d) proceeds of the foregoing, including insurance proceeds; and (e) all books and records regarding the foregoing, in each case, now existing or hereafter arising (collectively, the "Collateral"). The Obligations have been incurred for value given to enable Borrower to acquire rights in or the use of the Equipment (which value has in fact been so used by Borrower). Lender's security interest in the Equipment constitutes a "purchase-money security interest" under the Uniform Commercial Code as enacted in Pennsylvania, as in effect from time to time (the "UCC"). Borrower authorizes Lender to prepare and file UCC financing statements with respect to the Collateral and ratifies any UCC financing statements previously filed. Borrower agrees to pay or reimburse Lender for any filing, recording or taxes in connection with any such filings. Borrower shall be the sole owner of the Equipment and shall keep the Equipment free and clear of all liens, claims or encumbrances, other than Lender's security interest.

**4. DISCLAIMER OF WARRANTIES.** BORROWER ACKNOWLEDGES THAT LENDER IS NEITHER THE MANUFACTURER, DISTRIBUTOR, SUPPLIER OR OTHER SELLER (WHETHER OR NOT A MERCHANT OR DEALER) OF THE EQUIPMENT (COLLECTIVELY, THE "SUPPLIER") OR AN AGENT THEREOF. BORROWER FURTHER ACKNOWLEDGES THAT LENDER HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION, EITHER EXPRESSED OR IMPLIED, OF ANY KIND WHATSOEVER WITH RESPECT TO THE EQUIPMENT, INCLUDING, BUT NOT LIMITED TO: (A) THE FITNESS, DESIGN, UTILITY OR CONDITION OF THE EQUIPMENT; (B) THE MERCHANTABILITY OF THE EQUIPMENT OR ITS FITNESS FOR ANY PARTICULAR PURPOSE; (C) THE QUALITY, CAPABILITIES OR CAPACITY OF THE EQUIPMENT AND THE MATERIALS THEREIN, OR THE WORKMANSHIP IN OR PERTAINING TO THE EQUIPMENT; (D) ANY LATENT DEFECTS IN THE EQUIPMENT; (E) ANY PATENT, COPYRIGHTS, OR TRADE SECRET INFRINGEMENT OR OTHER INTELLECTUAL PROPERTIES MATTERS; AND (F) THE COMPLIANCE OF THE EQUIPMENT WITH ANY DESCRIPTION OR WITH ANY REQUIREMENTS OF ANY RELEVANT LAW, RULE, CODE OR SPECIFICATION, THE PARTIES AGREE THAT LENDER HAS NO OBLIGATION TO INSTALL, TEST, ADJUST, REPAIR OR SERVICE ANY OF THE EQUIPMENT. Borrower may make no claims on account of the Equipment's operation, performance or condition against Lender and hereby waives same. Borrower is solely responsible for the selection, shipment, delivery and installation of the Equipment, expressly disclaims any reliance upon any statements made by Lender in connection therewith, and has received, reviewed and approved the terms of any purchase orders, warranties, licenses or agreements with respect to the Equipment. To the extent that any Supplier provides any warranties, Borrower shall enforce such warranties at its own expense against such Supplier.

**5. MAINTENANCE AND USE; LOSS OR DAMAGE.** Borrower, at its own cost and expense, shall maintain the Equipment in good condition and repair it in accordance with the Supplier's instructions. The Equipment shall be used solely for lawful business or commercial purposes (and not for any consumer, personal, home, or family purpose) and in accordance with all applicable laws and regulations, insurance policies, manufacturer's recommendations and accepted standards of care for the Equipment in the industry or trade in which it is customarily used. Borrower shall not make any alterations or modifications to the Equipment without Lender's prior written consent. Any replacement or substitution of parts, improvements, upgrades, or additions to the Equipment shall be part of the Collateral subject to Lender's security interest. Lender shall have the right to enter any premises where any Equipment is located and inspect it (together with related records) at any reasonable time. All risk of loss of the Equipment shall be borne by Borrower. Borrower shall promptly notify Lender in writing of any such loss (a "Casualty"). If any Equipment suffers a Casualty when Lender determines is beyond repair or materially impairs its value (an "Event of Loss"), Borrower shall, on the date the next Installment is due following such Casualty, pay Lender the entire unpaid principal balance due and owing under this Agreement as of such date, together with all accrued interest and other charges then due and owing under this Agreement.

**6. INSURANCE.** Borrower, at its own expense, shall keep the Equipment insured against all risks in form, substance and amount and with companies acceptable to Lender. Borrower shall provide Lender with satisfactory evidence of same. Such insurance shall name Lender as an additional insured and loss payee and provide that it may not be canceled or altered without at least 30 days' prior written notice to Lender. Should Borrower fail to obtain and maintain any such required insurance, Lender may at its option (but without any obligation to do so) obtain such insurance, the cost of which will be paid by Borrower as additional Obligations. Borrower hereby irrevocably appoints Lender as Borrower's attorney in fact to file, settle or adjust, and receive payment of claims under any such insurance policy and to endorse Borrower's name on any checks, drafts or other instruments in payment of such claim. Lender may, at its option, apply any insurance monies received under such policies to the cost of repairs to the Equipment and/or payment of the Obligations whether or not due.

**7. TAXES.** Borrower shall pay when due any and all taxes on this Agreement or the Collateral, and shall pay, or reimburse Lender for, all taxes, assessments, fees and other governmental charges paid or required to be paid by Lender or Borrower in any way arising out of or related to this Agreement or the Collateral before, during or after the term of this Agreement or following an Event of Default. Upon Lender's request, Borrower will furnish proof of payment of all such taxes. Borrower's reimbursement obligations shall survive the cancellation, termination or expiration of this Agreement.

**8. INDEMNITY.** Borrower shall defend, indemnify and hold Lender harmless of and from any and all claims, demands, liabilities, losses, damages, costs and expenses including reasonable attorneys' fees and costs, arising out of or otherwise relating to the Collateral and/or this Agreement, including but not limited to any claims based in negligence, breach, strict liability in tort, environmental liability infringement or other intellectual property matters. Borrower's indemnity obligations shall survive the cancellation, termination or expiration of this Agreement.

**9. COMPLIANCE WITH LAWS, NO SANCTIONS.** Borrower is and will remain in full compliance with all laws and regulations applicable to it, including the USA Patriot Act and all laws, regulations, orders and government guidance on Bank Secrecy Act compliance and the prevention and detection of money laundering violations and terrorist financings and shall ensure that Borrower and any person or entity that directly or indirectly owns Borrower or any affiliate are not listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC") or any other similar lists maintained by OFAC or any other governmental entity.

**10. REPRESENTATIONS, WARRANTIES AND AGREEMENTS.** Borrower hereby represents, warrants and agrees that: (a) Borrower is and shall remain duly organized and existing in good standing under the laws of the state of its formation and in the jurisdiction where the Equipment is located and shall conduct its business and manage its properties in compliance with all applicable laws, rules and regulations; (b) the execution, delivery and performance of this Agreement has been duly authorized by Borrower and it is binding on and enforceable against Borrower in accordance with its terms; (c) there is no pending or threatened litigation, tax or environmental claim, proceeding, dispute or regulatory or enforcement action (and Borrower shall promptly notify Lender of any of the same that may hereafter arise) that may adversely affect any Equipment or Borrower's financial condition or impair its ability to perform its Obligations; (d) the financial statements of Borrower are accurate and reflect as of their respective dates, results of operations and the financial condition of Borrower, such Guarantor or other entity they purport to cover and any copies of same are true and correct copies; (f) credit and other information regarding Borrower, any Guarantor or their affiliates or this Agreement may be disclosed by Lender to its affiliates and potential assignees, notwithstanding anything contained in any other agreement; and (g) Borrower may not assign, sell, lease or otherwise transfer any of rights, interest or obligations in, under and to this Agreement, any Equipment or any Collateral without the prior written consent of Lender.

**11. EVENT OF DEFAULT.** The occurrence of any one of the following events will constitute an event of default by Borrower under this Agreement (each, an "Event of Default"): (a) failure to pay any amount under this Agreement when due; (b) failure to maintain, use or operate the Equipment in compliance with any applicable law or regulation; (c) breach by Lessee of its covenants pursuant to Section 9 hereof; (d) failure to obtain, maintain and comply with all of the insurance coverages required under this Lease; (e) an inaccuracy in or breach of any representation or warranty by Lessee or any Guarantor in any financial statement, this Lease, any guaranty or any other document relating to this Lease or the Equipment; (f) Borrower does not perform any of its other obligations under this Agreement and this failure continues for ten (10) days after notification to Borrower; (g) the filing of a bankruptcy, insolvency, receivership or similar proceeding petition by or against Lessee or any Guarantor (unless, if involuntary, the proceeding is dismissed within sixty (60) days of the filing thereof); (h) Borrower or any Guarantor defaults under any other agreement with Lender or any of its affiliates or any other lease, loan agreement or other material financing obligation and the applicable grace or cure period has lapsed, (i) Borrower sells, assigns, pledges, encumbers or conveys any of its rights or interests in this Agreement or the Collateral in violation of the terms of this Agreement, or (j) any individual Guarantor dies.

**12. REMEDIES.** Upon any Event of Default, Borrower shall pay, as liquidated damages, to the extent permitted by law, a sum equal to the aggregate of the following: (a) all due and unpaid Installment payments and other sums due under this Agreement plus any accrued and unpaid interest and late charges, if any, (b) the total of all remaining Installment payments due under this Agreement plus (c) interest at the rate of one and one half percent (1.5%) per month on the foregoing amounts from the date of the Event of Default. Lender shall also have the right to recover from Borrower any expenses paid or incurred by Lender in connection with the enforcement of its rights and remedies under this Agreement, the collection of sums due hereunder, and the repossession, holding, repair, preparing for sale and subsequent sale, lease or other disposition of the Equipment, in all cases including reasonable attorneys' fees of twenty percent (20%) but in no event less than five thousand dollars ($5000) and any other legal expenses incurred (collectively

Case ID: 240700279

Case ID: 240700279

DocuSign Envelope ID: 4378AD59-AEA0-4738-AD70-04071D55AE4F

"Enforcement Expenses"). Lender is hereby authorized and empowered, with the aid and assistance of any person or persons, to enter any premises where the Equipment or any part thereof is, or may be placed, and to assemble and/or remove same and/or to render it unusable and sell and dispose of such Equipment at one or more public or private sales upon at least ten (10) days' written notice to Borrower of such sale. Lender shall apply the proceeds of any such sale towards the payment of all Enforcement Expenses, the liquidated damages specified above, and other indebtedness secured hereby, and if such proceeds are insufficient to fully pay all such items, Borrower agrees to pay Lender any deficiency. Lender shall also have all rights and remedies available under law and all rights and remedies hereunder are cumulative and not exclusive and a waiver by Lender of any breach by Borrower shall not constitute a waiver of future breaches or defaults.

13. RIGHT OF SETOFF. Lender reserves and shall have a right of setoff in all Borrower's accounts with Lender or any bank or financial institution affiliated with Lender (whether checking, savings or other account and whether evidenced by a certificate of deposit or not), including all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future; excluding, however, any accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff any and all payments due or that become due as a result of an Event of Default against any and all such accounts and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this Section.

14. LENDER'S ASSIGNMENT. Lender may assign any of Lender's interest in and to this Agreement and/or the Collateral, without notice to, or consent from, Borrower. Borrower agrees that if it receives written notice of an assignment from Lender, Borrower will pay all installments and other amounts hereunder to such assignee or as instructed by Lender. Borrower also agrees to confirm in writing receipt of notice of any assignment as may be reasonably requested by Lender or assignee. Borrower hereby waives and agrees not to assert against any such assignee any defense, set-off, recoupment claim or counterclaim which Borrower has or may at any time have against Lender for any reason whatsoever.

15. NOTICES. All written notices called for herein shall be deemed delivered if and when delivered in person, or 2 business days after sending overnight by a nationally recognized courier service or 5 days after sending by certified mail, return receipt requested to the respective party's address hereon or at such other address as a party may provide in writing to the other from time to time in accordance with notice hereunder.

16. SEVERABILITY; SURVIVAL. If any provision of this Agreement or the application thereof to any party or circumstance is held invalid or unenforceable, the remainder of this Agreement and the application of such provision to other parties or circumstances shall not be affected thereby and to this end the provisions of this Agreement are declared severable. A finding of invalidity or unenforceability in one jurisdiction shall not be conclusive in another jurisdiction. All obligations of Borrower reasonably intended to survive the termination or other ending of this Agreement, including but not limited to Borrower's indemnity and reimbursement obligations, shall so survive.

17. ENTIRE AGREEMENT, NO ORAL AGREEMENT. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and shall not be amended or modified in any manner except by a document in writing executed by both parties. All prior conversations, agreements and representations relating to this Agreement or to the Equipment or Collateral are of no force and effect.

18. SECTION HEADINGS. The section headings in this Agreement do not constitute part of this Agreement, but are for informational purposes only.

19. FURTHER ASSURANCES, ADDITIONAL DOCUMENTS. Borrower authorizes Lender to prepare and file UCC financing statements and continuation statements with respect to the Collateral and ratifies any financing statements previously filed. Borrower agrees to pay or reimburse Lender for any filing, recording or taxes in connection with any such filings. Upon demand, Borrower shall deliver to Lender any financial statements and additional information reasonably requested by Lender relating to the Collateral and/or the general financial condition of Borrower. Borrower shall obtain and deliver to Lender and/or promptly execute or otherwise authenticate any documents, filings, waivers, releases and other records, and will take such further action as Lender may reasonably request in furtherance of Lender's rights under this Agreement, and Borrower shall pay or reimburse Lender for any costs relating thereto. In the event that Lender is required to promptly execute and deliver to Lender such documents, correct manifest errors in this Agreement and any addenda, attachments, exhibits and riders hereto, and after the occurrence of an Event of Default, enforce and compromise claims relating to the Collateral against insurers, any Supplier or other persons; all without any obligation to do so. Lender, in addition to all other rights and remedies provided in this Agreement or otherwise by law or equity permitted, is irrevocably appointed as Borrower's attorney-in-fact authorized by Borrower, but under no duty, to execute Borrower's name on any such documents. Such failure or refusal by Borrower to execute or deliver documents as aforesaid, regardless of whether Lender shall exercise its aforesaid right to execute Borrower's name shall constitute an Event of Default hereunder.

20. CONTROLLING LAW AND JURISDICTION. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF PENNSYLVANIA. BORROWER AGREES THAT ANY ACTIONS OR PROCEEDING TO WHICH LENDER IS A PARTY ARISING DIRECTLY OR INDIRECTLY FROM THIS AGREEMENT, SHALL BE LITIGATED, AT LENDER'S OPTION, IN ANY STATE OR FEDERAL COURT HAVING SITUS WITHIN PENNSYLVANIA OR ANY STATE WHERE ANY ASSIGNEE OF LENDER IS LOCATED, AND THAT SAID COURTS SHALL HAVE JURISDICTION THEREOF, INCLUDING OVER BORROWER.

21. PROCESSING FEES. Borrower agrees to pay Lender's expenses and any fees incurred in the processing of this transaction and in the investigation of the credit worthiness of Borrower and Guarantor, if any.

22. JURY TRIAL WAIVER. BORROWER AND LENDER HEREBY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON THIS AGREEMENT.

23. COUNTERPARTS, ELECTRONIC DOCUMENTS. This Agreement may be executed manually, digitally or electronically in one or more counterparts, each of which shall constitute one and the same agreement. Borrower and Lender intend and agree that both (a) a photocopy and an electronically transmitted pdf or other reproduction of this Agreement which includes a photocopy of Borrower's and Lender's signatures and (b) an electronically signed and emailed or otherwise transmitted or delivered counterpart of this Agreement shall be treated as an original and shall be valid, authentic, and legally binding as the original signed Agreement for all purposes, and shall be admissible in court as evidence of this transaction. Only the original signed counterpart of this Agreement marked "original" by Lender shall be deemed the original tangible chattel paper under the UCC and if this Agreement is signed electronically by Borrower only the counterpart electronically maintained by Lender or the counterpart that bear's Lender's manual signature shall be the authoritative copy of this Agreement. Lender (or any subsequent assignee) may transfer such authoritative copy and a security interest in, and control of, such authoritative copy may be perfected through the transfer and control of such authoritative copy of this Agreement (without any need to transfer the tangible chattel paper copy) and the inclusion of a notation on such authoritative copy that the assignee is the secured party of such record.

24. MISCELLANEOUS. No provision of this Agreement may be waived except by the written consent of Lender. Time is of the essence. Borrower or Guarantor shall provide Lender with such corporate resolutions, opinions of counsel, financial statements and other documents as Lender shall reasonably request from time to time. If more than one Borrower is named in this Agreement, the liability of each shall be joint and several. All financial data submitted to Lender is hereby acknowledged and affirmed as true and correct copies of the signed originals. Borrower's indemnity and reimbursement obligations shall survive the cancellation, termination or expiration of this Agreement. Borrower's Obligations under this Agreement are non-cancelable, absolute, irrevocable and unconditional. This Agreement inures to the benefit of, and is binding upon, each of the parties hereto and its successors and permitted assigns. No failure or delay on the part of Lender in exercising any of its options, powers, rights or remedies arising from this Agreement, including but not limited to in the event of an Event of Default, nor any partial or single exercise thereof, shall constitute any waiver by Lender. Any waiver by Lender may only be in a writing signed by its authorized agent.

If any court of competent jurisdiction determines that any provision of this Agreement Section is invalid or unenforceable in whole or in part, such determination, as to such jurisdiction, shall not prohibit Lender from enforcing its rights and establishing its damages sustained as the result of any breach of this Agreement in accordance with the laws of such jurisdiction.

IN WITNESS WHEREOF, each of the parties hereto have caused this Agreement to be executed by its duly authorized officer.

MERIDIAN EQU____    Rejuvenation____

By: _Jody Wagner_ (DocuSigned by)    By: _Abraham Woods III_ (DocuSigned by)
Name: Jody Wagner    Name: C585C4630DBD4FB...
Title: SVP, Director of Operations    Title: MD
Address: 9 Old Lincoln Highway, Malvern, PA 19355    Address: 108 Boston Ave, Suite 103 , Altamonte Springs, FL 32701
    Phone: ____    Email: ____
    Contact: ____    Tax ID No: ____

---

**GUARANTY**

With knowledge that Lender will enter into the above Agreement with Borrower in reliance upon the existence of this Guaranty and the validity and enforceability of the obligations and liabilities of the undersigned ("Guarantor") to Lender contemplated hereby, Guarantor hereby unconditionally, absolutely and irrevocably guarantees to Lender the prompt payment and/or performance of all obligations and liabilities of Borrower at any time owing to Lender under the above Agreement, whether direct or indirect, matured or unmatured, primary or secondary, or certain or contingent, including, without limitation, any and all Rent, any payments due during any renewal, any liquidated damages, reasonable attorney's fees, costs and expenses of enforcement and collection incurred by Lender in enforcing Borrower's obligations and liabilities under the above Agreement and all other amounts due under the Agreement, which may at any time be payable in connection with the above Agreement (collectively, the "Obligations"). This Guaranty is a guaranty of payment and performance, and not a guaranty of collection. Guarantor shall not be released from any obligations under this Guaranty for any reason, nor shall such obligations be reduced, diminished or discharged for any reason whatsoever, including but not limited to any modification or waiver of the above Agreement, any adjustment, extension or compromise made by Lender in favor of Borrower or any other person, the application of any payments and receipts, any insolvency, bankruptcy, dissolution, appointment of a receiver for, or other similar proceeding affecting Borrower or Guarantor; any sale or other disposition of any of the Equipment or assets of Borrower, the invalidity, illegality or unenforceability of the above Agreement or any Obligation for any reason whatsoever, any release of Borrower, or any other action or inaction on the part of Lender. Guarantor waives all notices and all defenses to Guarantor's obligations hereunder, whether arising by operation of law, agreement or otherwise, including any defense that Guarantor may have or assert against the enforcement of this Guaranty or any Obligation based upon suretyship principles or any impairment of the Equipment or other collateral. If any provision of this Guaranty is invalid or unenforceable, the remainder of this Guaranty shall not be affected thereby and the provisions hereof are declared severable. In the event that more than one person executes this Guaranty, each such person shall be jointly and severally liable hereunder. Any action or proceeding to which Guarantor is a party arising directly or indirectly from this Guaranty shall be litigated in any state or federal court in the Commonwealth of Pennsylvania or any state where any assignee of Lender is located, at Lender's choice, and Lender consents to the in personam jurisdiction of any such state and federal courts. This Guaranty shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania. GUARANTOR HEREBY WAIVES ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON THIS GUARANTY OR THE ABOVE AGREEMENT.

SIGNATURE: _(DocuSigned by)_ C585C4630DBD4FB...    PRINT NAME: Abraham Woods III    DATE: 3/1/2022 | 10:47:53 AM PST

SIGNATURE: ____    PRINT NAME: ____    DATE: ____

EXHIBIT 1

**Meridian Equipment Finance LLC**
A DIVISION OF BRYN MAWR BANK

## Early Commencement Addendum to
## Equipment Finance Agreement

This Early Commencement Addendum to Equipment Finance Agreement ("Addendum") is made by and among Meridian Equipment Finance LLC as "Lender" and Rejuvenation Treatment Center LLC as "Borrower".

3/2/2022

WHEREAS, Lender and Borrower are parties to Equipment Finance Agreement # _____, dated _____ (the "Agreement"), pursuant to which Lender has agreed to finance or refinance the Borrower's purchase of the equipment as described below (the "Equipment"); and

WHEREAS, the Vendor from whom Borrower is purchasing the Equipment (as named below and below, the "Vendor") requires that a payment be made to it prior to the Equipment being shipped and delivered to Borrower (the "Payment"); and

WHEREAS, Lender, in the ordinary course of its business, would not make a payment to Vendor for the Equipment, either in whole or in part, prior to Borrower's inspection and acceptance of the Equipment; and

WHEREAS, Borrower directs Lender to make the Payment to Vendor and to agree to make and advance such other payments to Vendor as Vendor may require (collectively, the "Lender Obligations") in order to finance the Borrower's purchase of the Equipment, prior to Borrower's inspection and acceptance of the Equipment; and

WHEREAS, in exchange for the Lender Obligations, Borrower has agreed (i) to commence the Agreement and the installment payments provided for therein (hereinafter, and inclusive of applicable tax, "Installment Payments") with full acknowledgment and understanding of its obligations under the Agreement even though the Equipment has not been delivered or inspected, and (ii) that, if Borrower fails or refuses to make the payments to Lender required under the Agreement for any reason, then at Lender's sole election, Lender shall be deemed to have made a loan to Borrower in an amount described in this Addendum, payable upon demand, all upon the terms and conditions set forth herein.

Now therefore, the parties hereto, expressly intending to be legally bound agree as follows:

1. By executing this Addendum, subject to the terms and conditions of this Addendum and the Agreement, Lender agrees to perform the Lender Obligations and Borrower (i) fully accepts the Equipment and the unconditional obligation to make all payments due to Lender under the terms and conditions of the Agreement and (ii) agrees that the Agreement and the Installment Payments due thereunder, have commenced. Borrower understands that Lender has finalized the Lender Obligations and that Borrower acknowledges final delivery of the Equipment and agrees to commencement of the Installment Payments (the "Final Delivery Date"). Capitalized terms used herein without definition shall have the meaning given given to such terms in the Agreement.

2. Borrower agrees that it does not have the right to terminate the Agreement or reject or return the Equipment to Vendor without Lender's prior express written consent, which consent may be withheld in the sole discretion of Lender. Borrower will continue to make the Installment Payments in a timely manner notwithstanding any nonconformity of the Equipment with the Borrower's specifications and notwithstanding any issues related to delivery and inspection by Borrower. Borrower covenants and agrees that it will not assert as a justification to nonpayment of the Installment Payments any defense that may arise due to nonconformity of the Equipment or issues related to its delivery or inspection, but shall pursue its legal remedies, if any, solely from Vendor. In connection with the foregoing, Borrower further waives all rights of recourse against Lender resulting from, and holds Lender harmless from, any nonconformity of the Equipment to Borrower's specifications or any failure or default related to delivery or inspection of the Equipment including, but not limited to, any breach by Vendor of Vendor's obligations under any agreement.

3. If Borrower fails or refuses to make the Installment Payments to Lender required under the Agreement for any reason (a "Non-Payment Event"), including, but not limited to: a) Vendor's failure to deliver the Equipment to Borrower; b) Borrower's rejection and/or return of the Equipment; or c) a court's determination that Lender may not enforce the Agreement provisions, then at Lender's sole election, Lender, upon payment of the Lender Obligations to Vendor, shall be deemed to have made and completed a loan to Borrower hereunder (the "Loan") as of the date of such election (the "Loan Date") in an amount (the "Loan Amount") equal to the sum of a) the aggregate amount of Installment Payments due on or before the Loan Date that are unpaid; plus b) the present value of all Installment Payments due after the Loan Date, discounted to the Loan Date at an annual rate of interest equal to one percent (1%). The Loan Amount shall bear interest on the unpaid balance at the highest enforceable interest rate permitted by law in the Commonwealth of Pennsylvania. The aforesaid loan shall be evidenced by this Addendum, the Agreement and all other relevant transaction documents and such loan shall be payable on demand in lawful money of the United States of America. Borrower hereby grants to Lender a security interest in the Equipment and any insurance and other proceeds thereof to secure all of Borrower's obligations to Lender under the Loan and Lender may protect, and provide notice of, its interest by filing financing statements authorized under the UCC in all appropriate jurisdictions where such filing is required or recommended to perfect such security interest. At any time after a Non-Payment Event, at Lender's option, Lender may accelerate any balance due under the loan and demand immediate payment of the Loan Amount, together with all accrued and unpaid interest thereon and enforce all of Lender's remedies found in the Agreement. Borrower agrees to pay all of Lender's costs and expenses incurred in collecting the Loan, including reasonable attorney fees of 20% of the outstanding balance with a minimum amount of $1000.00. Notwithstanding anything to the contrary in this Addendum, if Lender elects to enforce the provisions of the Agreement, then Borrower's prompt payment in full of all amounts owing to Lender under the Agreement shall constitute payment in full of all amounts owing to Lender under the Loan.

4. Borrower agrees that Lender's obligation is solely to finance the acquisition of the Equipment by Borrower and Lender did not undertake or agree to perform any other function and, as set forth above, acknowledge that neither the Vendor, nor any salesperson of Vendor, is an agent, independent contractor or employee of Lender. If Borrower commences an action, or otherwise assert a claim, against Lender that relates or refers to the Equipment in any fashion or manner, or to the Agreement or any other aspect of the relationship or any other transaction document, Borrower shall be liable for all of Lender's attorney fees and costs incurred in defending that action or proceeding unless a final non-appealable verdict is entered against Lender and in favor of Borrower. Additional sanctions may be awarded by any court if the action is deemed frivolous. Borrower expressly agrees that any such action or claim commenced shall be brought and venued solely in the state and federal courts of the Eastern District of Pennsylvania or in any state where an assignee of Lender is located.

5. THIS ADDENDUM SHALL BE CONSTRUED, GOVERNED, INTERPRETED, AND ENFORCED IN ACCORDANCE WITH THE LAWS OF COMMONWEALTH OF PENNSYLVANIA AND SHALL BE DEEMED TO BE FULLY AND SOLELY EXECUTED, PERFORMED, AND/OR OBSERVED IN THE COMMONWEALTH OF PENNSYLVANIA. THE PARTIES HERETO EXPRESSLY CONSENT TO PERSONAL JURISDICTION OF THE COMMONWEALTH OF PENNSYLVANIA AND ANY STATE WHERE ANY ASSIGNEE OF LENDER IS LOCATED AND BORROWER HEREBY CONSENTS TO PERSONAL JURISDICTION AND VENUE IN THE STATE AND FEDERAL COURTS OF THE EASTERN DISTRICT OF PENNSYLVANIA AND EACH OF SUCH OTHER STATES AND WAIVE ANY RIGHT TO TRANSFER VENUE IN ANY ACTION OR PROCEEDING BROUGHT IN ANY COURT THEREIN, STATE OR FEDERAL, ARISING FROM OR ALLEGING FACTS ARISING FROM THE TRANSACTIONS CONTEMPLATED HEREIN, AND THE PARTIES HEREBY EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING HEREUNDER.

6. The above Recitals are incorporated herein. This Addendum and the Agreement constitute the entire agreements and understanding of the parties with respect to the subject matter herein, and supersedes all previous oral or written agreements or understandings between the parties with respect to the subject matter herein. In the event that any term of this Addendum and the Agreement conflict, the term of this Addendum shall prevail. No modification or amendment shall be valid unless in writing, signed by a duly authorized representative of the party against which the enforcement of such modification or amendment is sought. No term or provision shall be deemed waived and no breach excused, unless such a waiver or consent shall be in writing and signed by a duly authorized representative of the party affected.

7. Borrower and Lender intend and agree that a photocopy or facsimile of this Addendum which includes a photocopy or facsimile of Borrower's and Lender's signatures shall be treated as an original and shall be valid, authentic, and legally binding as the original signature Addendum for all purposes, and shall be admissible in court as evidence of this transaction but shall not be considered chattel paper as defined by the UCC.

| EQUIPMENT DESCRIPTION | VENDOR | AMOUNT ADVANCED |
|---|---|---|
| See Schedule A | BTL Industries Inc | 100% of Vendor Invoice |

LENDER: Meridian Equipment Finance LLC

Signature: _Jo_ [DocuSigned by]

Print Name: _____  B23CBA3D753A495...

Title: SVP, Director of Operations

Date: 3/2/2022 | 15:17:56 PM EST

BORROWER: Rejuvenation Treatment Center LLC

Signature: _____ [DocuSigned by]

Print Name: Abraham Woods, III

Title: MD

Date: 3/1/2022 | 10:47:53 AM PST

Case ID: 240700279

EXHIBIT 1

DocuSign Envelope ID: 4378AD59-AEA0-4738-AD70-04071D55AE4F

**LOAN GUARANTY**
**(Entity as Guarantor)**

Meridian
Equipment Finance LLC
A SUBSIDIARY OF MERIDIAN BANK

Finance Agreement # ▉▉▉▉▉▉▉

**BETWEEN: Meridian Equipment Finance LLC ("LENDER")**

**AND: <u>Rejuvenation Treatment Center LLC</u> ("BORROWER")**

1. **CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, herein acknowledged as sufficient and received, the undersigned guarantor (individually, and collectively if more than one, "Guarantor") absolutely, unconditionally and irrevocably guarantees full and punctual payment and the satisfaction of all obligations of Borrower to Lender under and arising from the above referenced equipment finance agreement ("Agreement"). This is a guaranty of payment and performance. Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated under the Agreement or against any collateral securing same.  Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under and arising from the Agreement.  Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing. A failure by Guarantor to meet its obligations hereunder shall be a further Event of Default under the Agreement. Among other things, Guarantor agrees to pay all interest charges, late charges, attorney's fees and any other costs or expenses incurred by Lender in enforcing the Agreement and Lender's rights thereunder.

2. **WAIVER OF NOTICE OF MODIFICATION OF AGREEMENT.** Guarantor hereby agrees that at any time and from time to time without notice to Guarantor, the time for the Borrower's performance of or compliance with any of its obligations contained in the Agreement may be extended or such performance or compliance may be waived by Lender; such Agreement may from time to time be amended including for the purpose of adding any provision thereto or changing in any manner the rights of Lender or of Borrower thereunder, payment of any sums due or to become due under such Agreement may be extended, in whole or in part; and the terms of such Agreement may be waived by the Lender in its sole discretion, all without affecting the liability of the Guarantor hereunder.

3. **LENDER REMEDIES.** Lender may pursue its rights and remedies under this Guaranty and shall be entitled to payment hereunder and to enforce all of its other rights hereunder notwithstanding any other guaranty of, or security for, all or any part of the obligations of Borrower under the Agreement and notwithstanding any action taken or omitted to be taken by Lender to enforce any of its rights or remedies under such other guaranty or with respect to any other security, or any payment received thereunder, and the Guarantor shall not be subrogated, in whole or in part, to the rights of Lender against Borrower under such Agreement until Lender shall have been paid in full all such sums as are at any time payable by Borrower under such Agreement.

4. **WARRANT OF ATTORNEY.** THE FOLLOWING SETS FORTH A WARRANT OF AUTHORITY FOR ANY ATTORNEY TO CONFESS JUDGMENT AGAINST GUARANTOR.  IN GRANTING THIS WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST GUARANTOR, GUARANTOR, FOLLOWING CONSULTATION WITH (OR DECISION NOT TO CONSULT WITH) COUNSEL, AND WITH KNOWLEDGE OF THE LEGAL EFFECT HEREOF, KNOWINGLY, INTENTIONALLY AND VOLUNTARILY HEREBY WAIVES ANY AND ALL RIGHTS GUARANTOR HAS, OR MAY HAVE, TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING BEFORE ENTRY OF JUDGMENT UNDER THE CONSTITUTIONS AND LAWS OF THE UNITED STATES AND THE COMMONWEALTH OF PENNSYLVANIA. GUARANTOR ACKNOWLEDGES THAT, PURSUANT TO THIS WARRANT OF ATTORNEY, LENDER IS AUTHORIZED TO ENTER A JUDGMENT AGAINST GUARANTOR WHICH WILL GIVE LENDER A LIEN AGAINST GUARANTOR'S REAL PROPERTY AND WHICH MAY PERMIT LENDER TO SEIZE GUARANTOR'S PERSONAL PROPERTY INCLUDING, WITHOUT LIMITATION, GUARANTOR'S BANK ACCOUNTS.  GUARANTOR SPECIFICALLY ACKNOWLEDGES THAT LENDER HAS RELIED ON THIS WARRANT OF ATTORNEY IN GRANTING THE AGREEMENT TO BORROWER. UPON THE OCCURRENCE OF AN EVENT OF DEFAULT BY BORROWER UNDER THE AGREEMENT, GUARANTOR AUTHORIZES ANY PROTHONOTARY OR ANY ATTORNEY OR ANY CLERK OF ANY COURT OF RECORD TO APPEAR FOR AND ENTER JUDGMENT AGAINST GUARANTOR AT ANY TIME AND FROM TIME TO TIME FOR SUCH AMOUNT AS MAY BE OWING UNDER THE AGREEMENT, INCLUDING, BUT NOT LIMITED TO LOAN PAYMENTS AND THE RESIDUAL PAYMENT, IF ANY, WITH OR WITHOUT DECLARATION, WITH COSTS OF SUIT, WITHOUT STAY OF EXECUTION, AND WITH ATTORNEYS' FEES OF FIFTEEN PERCENT (15%) BUT IN NO EVENT LESS THAN ONE THOUSAND DOLLARS ($1000.00) AND GUARANTOR RELEASES ALL ERRORS IN CONNECTION WITH SUCH ACTION AND WAIVES ALL RIGHTS OF APPEAL WITH RESPECT TO THIS GUARANTY AS A WARRANT OF ATTORNEY.  THE ATTORNEY'S FEES PERCENTAGE AUTHORIZED BY THIS WARRANT SHALL NOT BE A CAP AND GUARANTOR ACKNOWLEDGES AND AGREES THAT SHOULD THE ATTORNEY'S FEES INCURRED EXCEED THE AMOUNT IN THE CONFESSED JUDGMENT IN CONNECTION WITH COLLECTING THIS JUDGMENT AND/OR LITIGATING THE JUDGMENT; THAT THE DAMAGES SET FORTH IN THE CONFESSED JUDGMENT MAY BE REASSESSED TO RECOVER THE ACTUAL ATTORNEY'S INCURRED AND ANY OTHER EXPENSES, COSTS OR OTHER ITEMS THAT MIGHT HAVE BECOME DUE UNDER THE LEASE AND GUARANTY.  THIS CONFESSION OF JUDGMENT AND WARRANT OF ATTORNEY SHALL NOT BE EXHAUSTED BY THE USE OR ATTEMPTED USE THEREOF BUT SHALL CONTINUE IN FULL FORCE AND EFFECT AND MAY BE EXERCISED AS OFTEN AS NECESSARY UNTIL ALL AMOUNTS AND OBLIGATIONS OWING BY GUARANTOR TO LENDER PURSUANT TO THE PROVISIONS OF THIS GUARANTY OR ON ACCOUNT OF THE EQUIPMENT AND/OR PER THE AGREEMENT SHALL HAVE BEEN PAID AND PERFORMED IN FULL.  ANYTHING CONTAINED HEREIN TO THE CONTRARY NOTWITHSTANDING, LENDER AGREES NOT TO LEVY, EXECUTE OR GARNISH ANY RESIDENTIAL REAL PROPERTY AS PROHIBITED BY THE ACT OF JANUARY 30, 1974 (NO.6) AND REGULATIONS THEREUNDER OF THE GUARANTOR.
GUARANTOR ACKNOWLEDGES AND AGREES THAT: (A) THIS WARRANT OF ATTORNEY TO CONFESS JUDGMENT IS BEING EXECUTED IN CONNECTION WITH A COMMERCIAL TRANSACTION, (B) LENDER AND ITS ATTORNEY'S EXERCISE OF THIS WARRANT OF ATTORNEY AUTHORIZING THE ENTRY OF JUDGMENT BY CONFESSION AGAINST GUARANTOR UNDER THE CIRCUMSTANCES PROVIDED FOR HEREIN WOULD BE AND IS IN ACCORDANCE WITH THE REASONABLE EXPECTATIONS OF GUARANTOR; (C) IN EXERCISING THE WARRANT OF ATTORNEY, LENDER AND ITS ATTORNEY ARE ACTING FOR THE SOLE BENEFIT OF LENDER, AND (D) LENDER AND ITS ATTORNEY DO NOT AND SHALL NOT HAVE ANY OF THE DUTIES TO GUARANTOR SET FORTH IN PARAGRAPH 20 P.S. 5601.3(b) OR ANY OTHER STATUTE IMPOSING DUTIES ON THE PERSON(S) EXERCISING THE WARRANT OF ATTORNEY, ALL OF WHICH ARE EXPRESSLY WAIVED.

Case 2:24-cv-06775-CAM    Document 15-3    Filed 02/19/25    Page 20 of 50
DocuSign Envelope ID: 4878AD69-4EA6-4738-AD70-0467D558AE4F

EXHIBIT 1

5. **ASSIGNMENT OF GUARANTY.** Lender may assign this Guaranty or any rights and powers hereunder with any assignment of the Agreement or any sums due or to become due, or any rights, claims, powers and remedies thereunder and, in the event of such assignment, the assignee shall have the same rights and remedies as if originally named herein. Guarantor hereby waives notice of any such assignment.

6. **WAIVER OF PRESENTMENT, DEMAND AND PROTEST.** Guarantor hereby waives diligence, presentment of any instrument, demand for payment, protest and notice of nonpayment or protest and the performance of each and every condition precedent to which Guarantor might otherwise be entitled by law and notice of the creation or accrual of any of the obligations of Borrower to Lender under such Agreement and all demands whatsoever.

7. **INDEPENDENT OBLIGATION.** Lender's obligations shall be deemed to have been created, contracted or incurred in reliance upon this Guaranty. The obligations of the Guarantor are joint and several, and are independent of the obligations of the Borrower. The obligations of Guarantor shall also be joint and several with those of any other guarantor under any other guaranty. Lender shall not be required to proceed against Borrower or the Equipment or enforce any other remedy whatsoever before proceeding against Guarantor.

8. **UNCONDITIONAL GUARANTY.** This Guaranty shall be construed as a continuing, absolute and unconditional guaranty of payment irrespective of the validity, or enforceability of (a) any of the obligations of Borrower to Lender; or (b) the Agreement; or (c) any security therefore, and notwithstanding any present or future law or order of any government or agency which would reduce, amend or otherwise affect any obligation of Borrower or other obligor or to vary any terms of payment, and irrespective of any other circumstance which might otherwise constitute a legal or equitable discharge or a guarantor. Guarantor absolutely, unconditionally and irrevocably guarantees and promises to pay Lender the prompt, complete and full payment and performance when due, whether at stated maturity, by acceleration or otherwise, all of Borrower's present and future indebtedness and obligations, whether monetary or non-monetary, under the Agreement. As used herein the term indebtedness shall have the most comprehensive meaning and shall include all current and future obligations due Lender by Borrower. This is a guaranty of payment and not of collection. Guarantor agrees that this Guaranty shall remain in full force and effect and be reinstated if at any time payment or performance of any of the payments or obligations guaranteed by this Guaranty is rescinded, reduced or must otherwise be restored or returned to Borrower, all as though such payment or performance had not been made.

9. **LAW AND JURISDICTION.** THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF PENNSYLVANIA. GUARANTOR AGREES THAT ANY ACTIONS OR PROCEEDING TO WHICH LENDER IS A PARTY ARISING DIRECTLY OR INDIRECTLY FROM THIS GUARANTY, SHALL BE LITIGATED, AT LENDER'S OPTION, IN ANY STATE OR FEDERAL COURT HAVING SITUS IN PENNSYLVANIA OR ANY STATE WHERE ANY ASSIGNEE OF LENDER IS LOCATED, AND THAT SAID COURTS SHALL HAVE JURISDICTION THEREOF, INCLUDING OVER GUARANTOR.

10. **WAIVER OF JURY.** GUARANTOR HEREBY KNOWINGLY, WILLINGLY AND VOLUNTARILY WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH THE GUARANTOR AND LENDER MAY BE PARTIES ARISING OUT OF OR IN ANY WAY PERTAINING TO THE AGREEMENT OR THIS GUARANTY. GUARANTOR AUTHORIZES LENDER TO FILE THIS PROVISION WITH THE CLERK OR JUDGE OF ANY RELEVANT COURT. GUARANTOR UNDERSTANDS THAT THIS WAIVER IS A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST PARTIES TO SUCH ACTIONS OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS GUARANTY. GUARANTOR ACKNOWLEDGES THAT NO REPRESENTATION OF FACT OR OPINION HAS BEEN MADE BY LENDER TO INDUCE THIS WAIVER OF JURY TRIAL. GUARANTOR ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS GUARANTOR AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL OF ITS OWN FREE CHOICE AND THAT IT HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL OR HAS VOLUNTARILY WAIVED SUCH OPPORTUNITY.

11. **MISCELLANEOUS.** This Guaranty constitutes the entire agreement between the parties with respect to the matters concerning the subject matter hereof and supersede all prior undertakings and agreements, written or oral, between the parties. All provisions of this Guaranty are material. Time is of the essence. No provision of this Guaranty may be waived, changed or terminated except by the written consent of Lender. Guarantor shall provide Lender financial statements and other documents as Lender shall reasonably request from time to time. If more than one Guarantor is named in this Guaranty, the liability of each shall be joint and several. Any provisions of this Guaranty which are unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such unenforceability without invalidating the remaining provisions hereof, and any such unenforceability shall not render unenforceable such provisions in any other jurisdiction. This Guaranty shall inure to the benefit of and be binding upon the parties hereto and their heirs, personal representatives, successors and assigns. Guarantor is and will remain in compliance with all laws and regulations applicable to it, including the USA Patriot Act and all laws, regulations, orders and government guidance on Bank Secrecy Act compliance and the prevention and detection of money laundering violations and terrorist financings and shall ensure that Guarantor and any person or entity that directly or indirectly owns Guarantor are not listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC") or any other similar lists maintained by OFAC or any other governmental entity.

Intending to be legally bound, Guarantor signs below:

**GUARANTOR**

Abraham L. Woods, III, M.D., P.A.
(GUARANTOR COMPANY NAME)

BY:
SIGNATURE   AUTHORIZED OFFICER
C585C4630DBD4FB...
Abraham Woods III

PRINT SIGNER'S NAME + TITLE
MD

COMPANY ADDRESS
106 Boston Ave, Suite 103, Altamonte Springs,

ATTEST

Case ID: 240700279

Case ID: 240700279

EXHIBIT 1

DocuSign Envelope ID: 4378AD59-AEA0-4738-AD70-04071D55AE4F



## Schedule A
**Equipment Finance Agreement #:** ▮▮▮▮▮▮▮

**BETWEEN:** Meridian Equipment Finance LLC ("LENDER")

**AND:** Rejuvenation Treatment Center LLC ("BORROWER")

| Vendor | Equipment Location | Equipment Description |
|---|---|---|
| BTL Industries Inc | 106 Boston Ave, Suite 103<br>Altamonte Springs, FL 32701 | 1 - Esmella s/n: ▮▮▮▮▮▮▮ |

**LENDER: MERIDIAN EQUIPMENT FINANCE LLC**

By: _Jody Wagner_ (DocuSigned by: B23CBA3D763A495...)

Print Name: _Jody Wagner_

Title: SVP, Director of Operations

Date: 3/2/2022 | 15:17:56 PM EST

**BORROWER: Rejuvenation Treatment Center LLC**

By: _Abraham Woods III_ (DocuSigned by: CE85C4630D8D4FB...)

Print Name: Abraham Woods III

Title: MD

Date: 3/1/2022 | 10:47:53 AM PST

Case ID: 240700279

DocuSign Envelope ID: 9CC6BF55-3BEE-4ABA-BFE5-B3F2DBC46D2C

EXHIBIT 1



## EFA Amendment

### Equipment Finance Agreement #

Lender:     Meridian Equipment Finance LLC
Borrower:   Rejuvenation Treatment Center LLC
Equipment:  See Schedule A with original documents

This Amendment ("Amendment") to the above Equipment Finance Agreement ("EFA") shall amend such EFA by and between the above Lender ("Lender") and the above Borrower ("Borrower")  All terms and conditions of the EFA not hereby amended shall be unchanged and remain in full force and effect.

The EFA is amended as follows:

The Payment schedule is now:  3 monthly payments of $99.00; followed by 4 monthly payments of $3,695.00; followed by 3 monthly payments of $99.00; followed by 56 monthly payments of $3,764.15

Please sign below, acknowledging the above.

Lender:  Meridian Equipment Finance LLC                    Borrower: Rejuvenation Treatment Center LLC

By: _____                     By: _____

Print Name: Jody _____B23C8A3D763A495___                Print Name: Abraham Woods III

Title: ___SVP, Director of Operations___                  Title: ___President___

Date: ___9/29/2022 | 15:18:10 PM EDT___                   Date: ___9/29/2022 | 12:29:16 PM EDT___

Case ID: 240700279

Case ID: 240700279

Complaint Confirmation



**EXHIBIT 1**

# Complaint Submission Confirmation

Thank you for submitting your complaint to the Florida Department of Agriculture and Consumer Services. Complaints are worked in the order they are received. Please refer to the online complaint number until you receive a case number from us.

<u>Print a Copy</u> of this confirmation for your records. You may <u>Attach Supporting Documents</u> now or send them by mail.

Please be aware that due to staffing shortages and a high volume of complaints our case managers are currently working through a dense backlog of complaints. This has resulted in longer than average wait times for the handling of cases. Return phone calls and emails from our case managers may also be delayed, but we will be responsive as quickly as we can.

[ DONE ]

**Online Complaint Number (OCN) :**   **514057**
**Submission Date :**   4/16/2024 3:31:58 PM

🖨 Print    📎 Attach Documents

## Complaint Details

**Consumer Information**
Abraham L Woods
106 Boston Ave, Suite 103
Altamonte Springs, FL 32701
UNITED STATES OF AMERICA
Email Address : pac106@aol.com
Home Phone : 407-830-4777
Work Phone : 407-921-8708

**Business Complaining Against**
MERIDIAN EQUIPMENT FINANCE
367 EAGLEVIEW BLVD
EXTON, PA 19341
Phone No : 484-267-9246

**Product Information**
Mode of Contact : OTHER
Date of Purchase : 02/23/2022
Product or Service Involved : BTL EMSELLA CHAIR
Cost of Product or Service : 171,403.30

**Consumer's complaint:**
I WAS LED TO UNDERSTAND THAT I COULDN'T PURCHASE THE EMSELLA CHAIR EXCEPT THROUGH BTL AND BTL WOULD SUPPORT MARKETING FOR ONE YEAR TO BRING CLIENTS TO THE OFFICE FOR THE EXCLUSIVE SERVICE. EACH MONTH WE PAY $4000.00 ON A FIVE YEAR NOTE WITHOUT ONE REFERRAL FROM BTL INDUSTRIES OVER THE FIRST YEAR OF THIS CONTRACT. IN 2024, I HAD TWO PATIENTS TO PURCHASE THIS SAME CHAIR FOR LESS THAN $3000.00. THEY WERE CLIENTS PAYING ME $1500/6 TOTAL TREATMENTS. I HAVE BEEN IN PRACTICE FOR OVER 30 YEARS AND HAVE NEVER HAD THIS TO HAPPEN. I ONLY SPOKE WITH KRIS HUSTON, DIRECTOR OF STRATEGIC BUSINESS GROWTH FOR BTL (208-919-2218)AND NEVER SPOKE TO OR GAVE MERIDIAN ANY OF MY INFORMATION FOR THIS CONTRACT. KRIS EXPLAINED THE TERMS OF THIS CONTRACT AND NEVER DISCLOSED TO ME ABOUT A THIRD PARTY AND THE FACT THAT I HAD FOUND THE SAME CHAIR ON ALIBABA WEBSITE FOR $2000.00 AND HE STATED THAT IT WASN'T THE SAME. I HAVE BEEN SCAMMED AND I STOPPED PAYMENT FOR THIS CHAIR DUE TO THE VALUE AND NEVER KNOWING THE VALUE OF THE INSURANCE I WAS PAYING EACH MONTH FOR THE CHAIR. SINCE 2022 I COULD HAVE OVER TWENTY CHAIRS PAID FOR. MERIDIAN IS NOW THREATENING ME SUMMARY JUDGMENT AND REPOSSESSION OF THIS CHAIR WITH SENDING AN INVESTIGATOR TO MY OFFICE(ILLEGALLY). MANY FLORIDA DOCTORS ARE VICTIM TO THIS PROFESSIONAL SCAM.

**What would satisfy the complaint:**
IMMEDIATE CANCELLATION OF THIS ILLEGAL CONTRACT IMMEDIATE INVESTIGATION BY STATE AND FEDERAL TO ASSIST OTHER PHYSICIANS OR HEALTHCARE AFFECTED BY THIS SCAM. IMMEDIATE REVOCATION OF MERIDIAN EQUIPMENT SERVICE FROM PERFORMING ANY BUSINESS IN THE STATE OF FLORIDA AND TO SEEK TO FILE AN OFFICIAL COMPLAINT IN PENNSYLVANIA INVESTIGATION OF KRIS HUSTON, DIRECTOR OF STRATEGIC GROWTH,206-919-2218/HUSTONK@BTLNET.COM KELI MALEK, SALES, 229-344-5739 BTL INDUSTRIES, INC 362 ELM STREET MARLBOROUGH, MA 01752 (866) 285-1656 FAX (888) 499-2502 WWW.BTL.COM; INFO@BTL.NET.COM

**Complaint is submitted for:**
Request mediation assistance.

## Supporting Documents

If you are unable to upload the supporting documents, such as letters written or received from the business, contracts, cancelled checks, receipts or any other proof of purchase/service, please mail these documents. When mailing supporting documents, please include the **ONLINE COMPLAINT NUMBER (OCN)**, as provided above on this confirmation page, to ensure proper identification. If your complaint involves a product or service that was advertised, include a copy of the advertisement. Please do not send originals.

**Mail supporting documents to:**

FDACS – CONSUMER SERVICES
2005 APALACHEE PARKWAY
TALLAHASSEE FL 32399-6500

## What Happens to My Complaint Once it is Received?

Filed and Attested by the Office of Judicial Records 18 AUG 2024 03:44 pm S. GILLIAM

Case ID: 240700279

Complaint Confirmation

We are in receipt of your complaint and any supporting documents you may have provided. A case will be created and assigned to a case manager who will review the information and attempt to contact the business on your behalf. A copy of your complaint, as submitted, will be provided to the business allowing them an opportunity to offer a response. You will also receive correspondence from your case manager advising that we are attempting to contact the business. The business is under no obligation to respond; however, we encourage them to cooperate and offer a response. Complaints are generally a matter of public record and available upon request. If your complaint falls within the jurisdiction of another local, state or federal agency, we may refer your complaint to that agency.

### Important Information

### Documents provided to this office are public record.

This office does not have the authority to offer legal advice or provide legal representation to consumers. This office generally does not become involved in matters that are scheduled or have already been heard in a court of law or have already been closed by the agency with proper jurisdiction.

The Florida Department of Agriculture and Consumer Services' A - Z Resource Guide can provide you with additional information and resources to contact. For additional assistance give us a call today at 1-800-HELP-FLA (435-7352) or (850) 410-3800 if calling from out of state.

### Additional Resources

- If your complaint involves a threat to your physical safety, or the safety of someone else, please contact your local law enforcement.
- If you have a time sensitive issue, please consider finding additional avenues to address your concerns.
  - Visit our A-to-Z Guide to see if the subject matter of your complaint is regulated, or addressed, by another agency. If so, filing a complaint directly with that agency may be to your benefit.
  - If your complaint is about the purchase of a vehicle, file a complaint with the Department of Highway Safety and Motor Vehicles located in your region.
  - If you have a Landlord/Tenant dispute that involves structural safety or unsafe living conditions, contact your local code enforcement, or in cases of emergency, your local law enforcement.
  - The Department of Business and Professional Regulation oversees a number of industries including, but not limited to, Construction and Electrical Contractors.
  - If you are filing a complaint about an Interstate move (a move that occurred from one state to another), file a complaint directly online with the US Department of Transportation's Federal Motor Carrier Safety Administration.
  - Do you or the business you're complaining about reside in the counties of Broward, Hillsborough, Miami-Dade, Orange, Palm Beach, and Pinellas? All of these counties have consumer protection related offices. You may consider contacting them directly for additional assistance.
  - Are you a Senior that has been defrauded or scammed? Visit the Florida Attorney General's Seniors vs Crime in your area to see what kind of services they provide.
  - If your complaint involves a monetary loss, you may consider reaching out to your banking or credit institution to see if there are any options to recoup your money.
  - Informal Mediation through FDACS is just that, informal. We do not have the authority to force a business to respond or resolve a dispute. You may consider looking into small claims court or contacting a private attorney if you wish to take further action.
- Should you resolve your complaint independently prior to informal mediation, please let us know so that we can close out your case and serve the other consumers that may need help.

We appreciate your patience with us as we are working diligently to address each complaint in the order that we receive them.

Case ID: 240700279

EXHIBIT 1



**Florida Department of Agriculture and Consumer Services**
**Division of Consumer Services**

**WILTON SIMPSON**
**COMMISSIONER**

## CONSUMER COMPLAINT FORM

Section 570.544(4), Florida Statutes

Please return completed complaint form to:

FDACS
Mediation & Enforcement
2005 Apalachee Parkway
Tallahassee, Florida 32399-6500

www.FloridaConsumerHelp.com
1-800-HELP-FLA (435-7352)
(850) 410-3800

Please complete this form in its entirety and provide as much information as possible. Only one business per complaint form. Write legibly. (The information on this complaint form may be subject to public inspection pursuant to Chapter 119, F.S.)

| **Person Making Complaint:** | **Complaint is Against:** |
|---|---|
| **WOODS, ABRAHAM L** | MERIDIAN EQUIPMENT FINANCE/MERIDIAN BANK CORP |
| Last Name, First Name, Middle Initial | Name of Business |
| **106 BOSTON AVENUE, SUITE 103** | **9 OLD LINCOLN HWY** |
| Mailing Address | Mailing Address |
| **ALTAMONTE SPRINGS, FLORIDA 32701** | **MALVERN, PA 19355** |
| City, State, Zip Code and Country | City, State, Zip Code |
| **407 921-8708** | **(484) 971-6240** |
| Home and Business Phone, including Area Code | Business Phone, including Area Code |
| **PAC106@AOL.COM** | |
| Email Address | Business Email and/or Web Address |

☑ *Please check if you would like to receive our Florida Consumer E-Newsletter. Our newsletter provides monthly consumer tips and information and is distributed by email.*

**Optional: Please select the box(es) that apply to you:**

AGE ☑ 60 or older    MILITARY STATUS ☐ Active Military ☑ Veteran

Product or Service involved: **EMSELLA CHAIR**    Amount Paid: $ **120,000.00**

Refund or Restitution Amount You Are Requesting: $ *120,000*

Date of Transaction: **2/24/2022**    I was contacted by: ☐ Telephone ☐ Mail ☑ Other

Have you retained an attorney? ☐ Yes ☑ No    Have you filed suit in court? ☐ Yes ☑ No
*If yes, you should rely on the advice of your attorney.*

Did you sign a contract or other papers, i.e. estimates, invoices, or other supporting documents? ☑ Yes ☐ No

### PLEASE ATTACH COPIES, DO NOT SEND ORIGINALS.

Documents and attachments submitted with this complaint may be subject to public inspection pursuant to Chapter 119, F.S.

Whoever knowingly makes a false statement in writing with the intent to mislead a public servant in the performance of his official duty shall be guilty of a misdemeanor of the second degree, punishable as provided in Section 775.082, 775.083, or 837.06, F.S.

Case ID: 240700279

**Please explain your complaint. Attach additional sheets if necessary.**

I HAVE BEEN A LICENSED Board-certified urologist in the state of Florida since 1988. I have served faithfully eight years on the medical board in the state of Florida and was also in the United States Navy as a commander. I AM FILLING OUT THIS COMPLAINT BECAUSE MERIDIAN NEVER SPOKE TO ME ABOUT THIS DEAL OR SENT ME ANY CLOSING DOCUMENTS. RECENTLY MY PRACTICE WAS AFFECTED WITH THE CYBER SECURITY BREACH, AND THEREFORE WE HAVE BEEN UPSIDE DOWN AND THEREFORE I'VE HELD THE PAYMENTS FOR THIS COMPANY, BUT WHILE HOLDING THE PAYMENTS, TWO OF MY PATIENTS CAME TO ME AND TOLD ME THEY PURCHASED THIS CHAIR FOR LESS THAN $5000. I HAVE INVOICES AND PAGES OF THAT IDENTICAL CHAIR AND WE DID A VALUATION WITH THE PERSON WHO KNOWS THIS CHAIR TO TELL US IT'S THE SAME ITEM. MY CONCERNS IS THAT MY PATIENTS WERE NOT HAPPY THAT I HAVE BEEN OVERCHARGING THEM FOR TREATMENT ON THIS CHAIR AND THEREFORE FEEL LIKE IT IS VERY INAPPROPRIATE FOR ME TO CONTINUE PAYING A COMPANY THAT HAS CHARGED ME OVER $171,000($221,700/5 YEARS).MY MONTHLY PAYMENT FOR THE CHAIR IS ABOUT $4000 AND I'VE HAD THIS CHAIR FOR TWO YEARS WITH THE UNDERSTANDING THAT THIS WAS A MEDICAL DEVICE AND THEREFORE IT COULD NOT BE PURCHASED ONLINE, WHICH IS NOT TRUE. I FEEL AS THOUGH THERE IS A SCAM BETWEEN THIS COMPANY AND THE COMPANY THAT ADVERTISED THE CHAIR AND SOLD IT TO ME AND THEREFORE WOULD LIKE THIS COMPANY TO WORK OUT A NEGOTIATION SO THAT I AM MADE WHOLE. THIS IS LIKE BUYING A HOUSE AND YOU REALIZE IT HAS NO VALUE FROM DAY ONE. I AM A SOLO PROVIDER AND ACTED IN GOOD FAITH TO PURCHASE NEW TECHNOLGY WHICH HAS BEEN BENEFICAL TO MY PATIENTS WITH URINARY INCONTINENCE AND PELVIC FLOOR DISORDERS. EACH MONTH I CAN PURCHASE A NEW CHAIR WITH THE MONTHLY PAYMENT FOR 5 YEARS. TRUTH IN LENDING SHOULD BE THE RULE, BUT INSTEAD GREED. I HAVE SPOKEN TO OTHER DOCTORS WHO HAVE BEEN THE VICTIM OF THIS SCAM. I FEEL LIKE A VICTIM FROM SINCLAIR LEWIS'S BOOK, THE JUNGLE.

**\*\* What would satisfy your complaint?**

THE COMPANY NEEDS TO REVIEW THE VALUATION OF THE MACHINE AND COMPARE IT TO THE ACTUAL PRICE TODAY AND REFUND ALL OF MY MONEY TO MAKE ME WHOLE AND TO ASSIST ME AND OTHERS TO GET BTL INDUSTRIES INC, 362 ELM STREET, MARLBOROUGH, MA 01752 TO CEASE AND DESIST ANY BUSINESS IN THE STATE OF FLORIDA AND TO MAKE ALL VICTIMS OF THE HEALTHCARE SCAM WHOLE. MERIDIAN NEEDS TO BE PENALIZED FOR MAKING LOANS ON MEDICAL EQUIPMENT WITHOUT PROPER VALUATION FOR MARKET PRICE. THEY SOLD ME A MACHINE WITH A WHOLESALE VALUE OF LESS THAN $2000 AND THE REST OF MY LOAN WAS PROFIT TO THEM. MY PRACTICE OF MORE THAN 30 YEARS IS PUT A RISK FOR CLOSING BASED ON UCC AND OTHER PENALTIES FOR NOT PAYING OFF AN INVALID LOAN. PLEASE HELP

\*\*The department cannot require businesses to take a particular action such as repairing or replacing a product or refunding money. The department may act as a mediator to attempt dispute resolutions; however, on occasion, the only recourse is to seek legal remedy through the court system.

**My signature authorizes the Department of Agriculture and Consumer Services to take any action deemed necessary for purposes of mediation, investigation or enforcement. I understand that the department does not give legal advice and cannot take legal action for me. I am filing this complaint to notify the department of the activities of this business/ individual and to seek any assistance available. I ACKNOWLEDGE THAT I AM AWARE THAT THE PERSON/ BUSINESS WHICH I AM COMPLAINING AGAINST WILL RECEIVE A COPY OF THIS COMPLAINT.**

Signature: _Abraham J. Woods_     Date: **4/30/2024**

☐ **I am filing this complaint for information purposes only and DO NOT want mediation assistance.**

Case ID: 240700279

 **EXHIBIT 1**



### Florida Department of Agriculture and Consumer Services
### Division of Consumer Services

**WILTON SIMPSON
COMMISSIONER**

## CONSUMER COMPLAINT FORM

Section 570.544(4), Florida Statutes

Please return completed complaint form to:

FDACS
Mediation & Enforcement
2005 Apalachee Parkway
Tallahassee, Florida 32399-6500

www.FloridaConsumerHelp.com
1-800-HELP-FLA (435-7352)
(850) 410-3800

Please complete this form in its entirety and provide as much information as possible. Only one business per complaint form. Write legibly. (The information on this complaint form may be subject to public inspection pursuant to Chapter 119, F.S.)

**Person Making Complaint:**

WOODS, ABRAHAM L
Last Name, First Name, Middle Initial

106 BOSTON AVENUE, SUITE 103
Mailing Address

ALTAMONTE SPRINGS, FLORIDA 32701
City, State, Zip Code and Country

407 921-8708
Home and Business Phone, including Area Code

PAC106@AOL.COM
Email Address

**Complaint is Against:**

BTL INDUSTRIES. INC
Name of Business

362 ELM STREET
Mailing Address

MARLBOROUGH, MA 01752
City, State, Zip Code

(866) 285-1656
Business Phone, including Area Code

WWW.BTL.COM; INFO@BTLNET.COM
Business Email and/or Web Address

☑ Please check if you would like to receive our Florida Consumer E-Newsletter. Our newsletter provides monthly consumer tips and information and is distributed by email.

**Optional: Please select the box(es) that apply to you:**

AGE ☑ 60 or older    MILITARY STATUS ☐ Active Military ☑ Veteran

Product or Service involved: EMSELLA CHAIR    Amount Paid: $ 120,000.00

Refund or Restitution Amount You Are Requesting: $ 120,000

Date of Transaction: 2/24/2022    I was contacted by: ☐ Telephone ☐ Mail ☑ Other

Have you retained an attorney? ☐ Yes ☑ No    Have you filed suit in court? ☐ Yes ☑ No
If yes, you should rely on the advice of your attorney.

Did you sign a contract or other papers, i.e. estimates, invoices, or other supporting documents? ☑ Yes ☐ No

### PLEASE ATTACH COPIES, DO NOT SEND ORIGINALS.

- Documents and attachments submitted with this complaint may be subject to public inspection pursuant to Chapter 119, F.S.

- Whoever knowingly makes a false statement in writing with the intent to mislead a public servant in the performance of his official duty shall be guilty of a misdemeanor of the second degree, punishable as provided in Section 775.082, 775.083, or 837.06, F.S.

DACS-10000 Rev. 06/19
Page 1 of 2

Case ID: 240700279

**EXHIBIT 1**

Please explain your complaint. Attach additional sheets if necessary.

I HAVE BEEN A LICENSED Board-certified urologist in the state of Florida since 1988. I have served faithfully eight years on the medical board in the state of Florida and was also in the United States Navy as a commander. I AM FILLING OUT THIS COMPLAINT BECAUSE I RECENTLY DISCOVERED THAT THE SALES TEAM OF THE COMPANY UNDER THE DIRECTION OF KRIS HUSTON, DIRECTOR OF STRATEGIC GROWTH , 206-919-2218, ALONG WITH KELI MALEK, 229-344-5739, LIED ABOUT THE DEVICE STATING THAT IT COULD ONLY BE SOLD AS A MEDICAL DEVICE FOR $171, 403.30. THEY FILLED OUT ALL PAPER WORK WITH THEIR FINANCIAL PARTNER, MERIDIAN EQUIPMENT FINANCE OF MALVERN PA, WHO APPROVED AND FINACED THE PURCHASE. THE TOTAL VALUE OF THIS LOAN FOR THE EMSELLA CHAIR OVER FIVE YEARS IS $221,700. TODAY THE VALUE OF THIS CHAIR AS SOLD ON THE INTERNET IS LESS THAN $5000. I AM PAYING $4000/MTH FOR THIS CHAIR AND WAS ADVISED BY THE SALES FORCE TO PROVIDE 6 TREATMENTS TO PATIENTS FOR $1500. THE CHAIR WORKS WELL AND TWO OF MY PATIENTS RECENTLY PURCHASED EMSELLA CHAIRS ON THE INTERNET WITH ONE MONEY.  WE PERFORMED A COMPARISON FOR TECHNOLOGY AND THE PRODUCTS WERE FROM THE SAME COMPANY AND PHOTOS WERE TAKEN AND THEY SHARED INVOICES WITH ME. THEY WERE ECTATIC TO KNOW WHAT I WAS PAYING FOR THIS TECHOLOGY. WITH THEIR HELP AND SUPPORT AND TALKING TO OTHER TRUSTING PHYSICIANS LIKE ME, WE REALIZED THAT THIS WAS A SCAM AND HEALTHCARE FRAUD. THE COMPANY WAS PAID AND USED THE MAJORITY OF THE MONEY TO SUPPORT THE GROWTH OF THE COMPANY AND TO CONTINUE SIGNING UP MORE PHYSICIANS AND HEALTHCARE WORKERS WHO ARE LOOKING FOR PRODUCTS TO HELP US STAY IN BUSINESS WITH LOW REIMBURSEMENTS. I HAVE FILED A COMPLAINT AGANIST MERIDIAN AND NOW ASK YOUR HELP TO STOP THE CONTINUOUS FRAUDULANT ACTIVITY AND SCAMS WHICH IF SUCCESSFUL WILL PUT MANY OF US OUT OF BUSINESS.  I WOULD LIKE ASSIST IN REMOVING THE BAD COMPANIES FROM DOING BUSINESS IN THE STATE OF FLORIDA.

  MERIDIAN NEVER SPOKE TO ME ABOUT THIS DEAL OR SENT ME ANY CLOSING DOCUMENTS. RECENTLY MY PRACTICE WAS AFFECTED WITH THE CYBER SECURITY BREACH, AND THEREFORE WE HAVE BEEN UPSIDE DOWN AND THEREFORE I'VE HELD THE PAYMENTS FOR THIS COMPANY, BUT WHILE HOLDING THE PAYMENTS, TWO OF MY PATIENTS CAME TO ME AND TOLD ME THEY PURCHASED THIS CHAIR FOR LESS THAN $5000. I HAVE INVOICES AND PAGES OF THAT IDENTICAL CHAIR AND WE DID A VALUATION WITH THE PERSON WHO KNOWS THIS CHAIR TO TELL US IT'S THE SAME ITEM. MY CONCERNS  IS THAT MY PATIENTS WERE NOT HAPPY THAT I HAVE BEEN OVERCHARGING THEM FOR TREATMENT ON THIS CHAIR AND THEREFORE FEEL LIKE IT IS VERY INAPPROPRIATE FOR ME TO CONTINUE PAYING A COMPANY THAT HAS CHARGED ME OVER $171,000($221,700/5 YEARS).MY MONTHLY PAYMENT FOR THE CHAIR IS ABOUT $4000 AND I'VE HAD THIS CHAIR  FOR TWO YEARS WITH THE UNDERSTANDING THAT THIS WAS A MEDICAL DEVICE AND THEREFORE IT COULD NOT BE PURCHASED ONLINE, WHICH IS NOT TRUE. I FEEL AS THOUGH THERE IS A SCAM BETWEEN THIS COMPANY AND THE COMPANY THAT ADVERTISED THE CHAIR AND SOLD IT TO ME AND THEREFORE WOULD LIKE THIS COMPANY TO WORK OUT A NEGOTIATION SO THAT I AM  MADE WHOLE. THIS IS LIKE BUYING A HOUSE AND YOU REALIZE IT HAS NO VALUE FROM DAY ONE. I AM A SOLO PROVIDER AND ACTED IN GOOD FAITH TO PURCHASE NEW TECHNOLOGY WHICH HAS BEEN BENEFICAL TO MY PATIENTS WITH URINARY INCONTINENCE AND PELVIC FLOOR DISORDERS. EACH MONTH I CAN PURCHASE A NEW CHAIR WITH THE MONTHLY PAYMENT FOR 5 YEARS. TRUTH IN LENDING SHOULD BE THE RULE, BUT INSTEAD GREED. I HAVE SPOKEN TO OTHER DOCTORS WHO HAVE BEEN THE VICTIM OF THIS SCAM. I FEEL LIKE A VICTIM FROM SINCLAIR LEWIS'S BOOK,  THE JUNGLE.

**\*\* What would satisfy your complaint?**

THE COMPANY NEEDS TO REVIEW THE VALUATION OF THE MACHINE AND COMPARE IT TO THE ACTUAL PRICE TODAY AND REFUND ALL OF MY MONEY TO MAKE ME WHOLE AND TO ASSIST ME AND OTHERS TO GET BTL INDUSTRIES INC, 362 ELM STREET, MARLBOROUGH, MA 01752 TO CEASE AND DESIST ANY BUSINESS IN THE STATE OF FLORIDA AND TO MAKE ALL VICTIMS OF THE HEALTHCARE SCAM WHOLE. MERIDIAN NEEDS TO BE PENALIZED FOR MAKING LOANS ON MEDICAL EQUIPMENT WITHOUT PROPER VALUATION FOR MARKET PRICE. THEY SOLD ME A MACHINE WITH A WHOLESALE VALUE OF LESS THAN $2000 AND THE REST OF MY LOAN WAS PROFIT TO THEM. MY PRACTICE OF MORE THAN 30 YEARS IS PUT A RISK FOR CLOSING BASED ON UCC AND OTHER PENALTIES FOR NOT PAYING OFF AN INVALID LOAN. PLEASE HELP

\*\*The department cannot require businesses to take a particular action such as repairing or replacing a product or refunding money. The department may act as a mediator to attempt dispute resolutions; however, on occasion, the only recourse is to seek legal remedy through the court system.

**My signature authorizes the Department of Agriculture and Consumer Services to take any action deemed necessary for purposes of mediation, investigation or enforcement. I understand that the department does not give legal advice and cannot take legal action for me. I am filing this complaint to notify the department of the activities of this business/ individual and to seek any assistance available. I ACKNOWLEDGE THAT I AM AWARE THAT THE PERSON/ BUSINESS WHICH I AM COMPLAINING AGAINST WILL RECEIVE A COPY OF THIS COMPLAINT.**

Signature: _Abraham L. Wood III_     Date: 4/30/2024

☐  I am filing this complaint for information purposes only and DO NOT want mediation assistance.

DACS-10000 Rev. 06/19
age 2 of 2

Case ID: 240700279

EXHIBIT 1



**EQUIPMENT FINANCE AGREEMENT**
**NUMBER** 114978.001

THIS EQUIPMENT FINANCE AGREEMENT (this "Agreement") is made as of _____ 3/2/2022 _____, between MERIDIAN EQUIPMENT FINANCE LLC, its successors and assigns ("Lender"), and Rejuvenation Treatment Center LLC, its successors and permitted assigns ("Borrower").

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Agreement agree as follows:

**1. FINANCING.** Subject to the terms and conditions of this Agreement, Lender hereby agrees to advance a loan to Borrower in the original amount specified below (the "Financing") to finance Borrower's acquisition or refinancing of the equipment, fixtures, licensed materials and other personal property described in Schedule A attached hereto and incorporated herein, together with all replacements thereof and parts, repairs, improvements, additions, accessions and accessories now or hereafter incorporated therein and/or affixed thereto (all of such equipment, personal property and other property are individually and collectively referred to herein as the "Equipment"). Borrower hereby authorizes Lender and appoints Lender as its attorney in fact to insert the serial numbers and other identification data relating to the Equipment in this Agreement. Borrower represents that it selected the Equipment, inspected it and found it to be entirely satisfactory, and has unconditionally accepted the Equipment and its delivery.

| FINANCIAL TERMS | | | | | ADVANCE PAYMENTS | |
|---|---|---|---|---|---|---|
| PRINCIPAL AMOUNT | TERM (Months) | # of INSTALLMENTS, PAYMENT AMOUNT, FREQUENCY | | FIRST INSTALLMENT PAYMENT | | $99.00 |
| $171,403.30 | 63 | 1 @ | $99.00, | Advance | FL Stamp Tax | $599.91 |
| | | 2 @ | $99.00, | Monthly | PROCESSING FEE | $299.00 |
| | | 60 @ | $3,695.00, | Monthly | TOTAL DUE AT SIGNING | $997.91 |

**2. REPAYMENTS OF FINANCING.** For value received, Borrower promises to pay to the order of Lender the principal amount of the Financing with interest thereon through and including the maturity date as follows: (a) in consecutive installments in the number, frequency, and amount specified above (each, an "Installment"), and (b) any outstanding principal, interest, late charges and other amounts due and payable under this Agreement shall be paid on the maturity date. Lender may adjust the amount of each Installment up or down by no more than 10% if the actual Equipment costs are different than the amount Lender used to calculate the amount of the Installment. To accommodate Borrower's billing cycle, Borrower agrees to pay an additional partial payment, determined by dividing the amount of the monthly Installment by thirty (30) and multiplying the quotient by the number of days remaining in such billing cycle. If any Installment or other amount payable hereunder is not paid within 10 days of the date such payment is due, Borrower shall pay an administrative late charge of 10% of such Installment or other amount timely paid. Such amount shall be payable in addition to all amounts payable by Borrower as a result of the exercise of any of the remedies herein provided. All Installments and other amounts payable under this Agreement shall be made in immediately available funds at Lender's address below or such other place as Lender shall specify in writing and shall not be subject to any abatement, defement, reduction, set-off, counterclaim, recoupment or defense of any kind. Borrower waives presentment, demand, protest and any notice thereof. Notwithstanding anything to the contrary contained herein, in no event shall any provision herein call for interest in excess of the maximum amount permitted by applicable law. If any interest under this Agreement exceeds the maximum amount permitted by applicable law, then any excess shall, at Lender's option, be applied to amounts due and owing hereunder or refunded to Borrower and the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowed under applicable law. In addition, on the date of this Agreement, Borrower shall pay to Lender a processing fee in the amount specified above.

**3. GRANT OF SECURITY INTEREST; TITLE.** To secure the payment and performance of all obligations, indebtedness and liabilities of Borrower to Lender under this Agreement and of any person or entity (each, a "Guarantor") that executes and delivers an agreement to guaranty the payment and performance of Borrower's obligations under this Agreement (collectively, the "Obligations"), Borrower hereby grants to Lender a first priority security interest in all of Borrower's right, title and interest in and to all of the Equipment, together with: (a) all accounts and other rights arising from or related to the use or operation of any Equipment; (b) all insurance, warranty and other claims against third parties with respect to any Equipment; (c) all software, computer programs and other intellectual property rights used in connection therewith; (d) proceeds of the foregoing, including insurance proceeds; and (e) all books and records regarding the foregoing, in each case, now existing or hereafter arising (collectively, the "Collateral"). The Obligations have been incurred for value given to enable Borrower to acquire rights in or the use of the Equipment (which value has in fact been so used by Borrower). Lender's security interest in the Equipment constitutes a "purchase-money security interest" under the Uniform Commercial Code as enacted in Pennsylvania, as in effect from time to time (the "UCC"). Borrower authorizes Lender to prepare and file UCC financing statements with respect to the Collateral and ratifies any UCC financing statements previously filed. Borrower agrees to pay or reimburse Lender for any filing, recording or taxes in connection with any such filings. Borrower shall be the sole owner of the Equipment and shall keep the Equipment free and clear of all liens, claims or encumbrances, other than Lender's security interest.

**4. DISCLAIMER OF WARRANTIES.** BORROWER ACKNOWLEDGES THAT LENDER IS NEITHER THE MANUFACTURER, DISTRIBUTOR, SUPPLIER OR OTHER SELLER (WHETHER OR NOT A MERCHANT OR DEALER) OF THE EQUIPMENT (COLLECTIVELY, THE "SUPPLIER") OR AN AGENT THEREOF. BORROWER FURTHER ACKNOWLEDGES THAT LENDER HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION, EITHER EXPRESSED OR IMPLIED, OF ANY KIND WHATSOEVER WITH RESPECT TO THE EQUIPMENT, INCLUDING, BUT NOT LIMITED TO: (A) THE FITNESS, DESIGN, UTILITY OR CONDITION OF THE EQUIPMENT; (B) THE MERCHANTABILITY OF THE EQUIPMENT OR ITS FITNESS FOR ANY PARTICULAR PURPOSE; (C) THE QUALITY, CAPABILITIES OR CAPACITY OF THE EQUIPMENT AND THE MATERIALS THEREIN, OR THE WORKMANSHIP IN OR PERTAINING TO THE EQUIPMENT; (D) ANY LATENT DEFECTS IN THE EQUIPMENT; (E) ANY PATENT, COPYRIGHTS, OR TRADE SECRET INFRINGEMENT OR OTHER INTELLECTUAL PROPERTIES MATTERS; AND (F) THE COMPLIANCE OF THE EQUIPMENT WITH ANY DESCRIPTION OR WITH ANY REQUIREMENTS OF ANY RELEVANT LAW, RULE, CODE OR SPECIFICATION. THE PARTIES AGREE THAT LENDER HAS NO OBLIGATION TO INSTALL, TEST, ADJUST, REPAIR OR SERVICE ANY OF THE EQUIPMENT. Borrower may make no claims on account of the Equipment's operation, performance or condition against Lender and hereby waives same. Borrower is solely responsible for the selection, shipment, delivery and installation of the Equipment, expressly disclaims any reliance upon any statements made by Lender in connection therewith, and has received, reviewed and approved the terms of any purchase orders, warranties, licenses or agreements with respect to the Equipment. To the extent that any Supplier provides any warranties, Borrower shall enforce such warranties at its own expense against such Supplier.

**5.MAINTENANCE AND USE; LOSS OR DAMAGE.** Borrower, at its own cost and expense, shall maintain the Equipment in good condition and repair it in accordance with the Supplier's instructions. The Equipment shall be used solely for lawful business or commercial purposes (and not for any consumer, personal, home, or family purpose) and in accordance with all applicable laws and regulations, insurance policies, manufacturer's recommendations and accepted standards of use for the Equipment in the industry or trade in which it is customarily used. Borrower shall not make any alterations or modifications to the Equipment without Lender's prior written consent. Any replacement or substitution of parts, improvements, upgrades, or additions to the Equipment shall be part of the Collateral subject to Lender's security interest. Lender shall have the right to enter any premises where any Equipment is located and inspect it (together with related records) at any reasonable time. All risk of loss of the Equipment shall be borne by Borrower. Borrower shall promptly notify Lender in writing of any such loss (a "Casualty"). If any Equipment suffers a Casualty which Lender determines is beyond repair or materially impairs its value (an "Event of Loss"), Borrower shall, on the date the next Installment is due following such Casualty, pay Lender the entire unpaid principal balance due and owing under this Agreement as of such date, together with all accrued interest and other charges then due and owing under this Agreement.

**6. INSURANCE.** Borrower, at its own expense, shall keep the Equipment insured against all risks in form, substance and amount and with companies acceptable to Lender. Borrower shall provide Lender with satisfactory evidence of same. Such insurance shall name Lender as an additional insured and loss payee and provide that it may not be canceled or altered without at least 30 days' prior written notice to Lender. Should Borrower fail to obtain and maintain any such required insurance, Lender may at its option (but without any obligation to do so) obtain such insurance, the cost of which will be paid by Borrower as additional Obligations. Borrower hereby irrevocably appoints Lender as Borrower's attorney in fact to file, settle or adjust, and receive payment of claims under any such insurance policy and to endorse Borrower's name on any checks, drafts or other instruments in payment of such claim. Lender may, at its option, apply any insurance monies received under such policies to the cost of repairs to the Equipment and/or payment of the Obligations whether or not due.

**7. TAXES.** Borrower shall pay when due any and all taxes on this Agreement or the Collateral, and shall pay, or reimburse Lender for, all taxes, assessments, fees and other governmental charges paid or required to be paid by Lender or Borrower in any way arising out of or related to this Agreement or the Collateral before, during or after the term of this Agreement or following an Event of Default. Upon Lender's request, Borrower will furnish proof of payment of all such taxes. Borrower's reimbursement obligations shall survive the cancellation, termination or expiration of this Agreement.

**8. INDEMNITY.** Borrower shall defend, indemnify and hold Lender harmless of and from any and all claims, demands, liabilities, losses, damages, costs and expenses including reasonable attorneys' fees and costs, arising out of or otherwise relating to the Collateral and/or this Agreement, including but not limited to any claims based in negligence, breach, strict liability in tort, environmental liability infringement or other intellectual property matters. Borrower's indemnity obligations shall survive the cancellation, termination or expiration of this Agreement.

**9. COMPLIANCE WITH LAWS, NO SANCTIONS.** Borrower is and will remain in full compliance with all laws and regulations applicable to it, including the USA Patriot Act and all laws, regulations, orders and government guidance on Bank Secrecy Act compliance and the prevention and detection of money laundering violations and terrorist financings and shall ensure that Borrower and any person or entity that directly or indirectly owns Borrower or any affiliate are not listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC") or any other similar lists maintained by OFAC or any other governmental entity.

**10. REPRESENTATIONS, WARRANTIES AND AGREEMENTS.** Borrower represents, warrants and agrees that: (a) Borrower is and shall remain duly organized and existing in good standing under the laws of the state of its formation and in the jurisdiction where the Equipment is located and shall conduct its businesses and manage its properties in compliance with all applicable laws, rules and regulations; (b) the execution, delivery and performance of this Agreement has been duly authorized by Borrower and it is binding on and enforceable against Borrower in accordance with its terms; (c) there is no pending or threatened litigation, tax or environmental claim, proceeding, dispute or regulatory or enforcement action (and Borrower shall promptly notify Lender of any of the same that may hereafter arise) that may adversely affect any Equipment or Borrower's financial condition or impair its ability to perform its Obligations; (d) the Equipment will remain in the location shown in Schedule A attached hereto unless Lender agrees otherwise in writing; (e) all information and financial statements at any time furnished by or on behalf of Borrower or any Guarantor are accurate and reflect as of their respective dates, results of operations and the financial condition of Borrower, such Guarantor or other entity they purport to cover and any copies of same are true and correct copies; (f) credit and other information regarding Borrower, any Guarantor or their affiliates or this Agreement may be disclosed by Lender to its affiliates and potential assignees, notwithstanding anything contained in any other agreement; and (g) Borrower may not assign, sell, lease or otherwise transfer any of its rights, interest or obligations in, under and to this Agreement, any Equipment or any Collateral without the prior written consent of Lender.

**11. EVENT OF DEFAULT.** The occurrence of any one of the following events will constitute an event of default by Borrower under this Agreement (each, an "Event of Default"): (a) failure to pay any amount under this Agreement when due; (b) failure to maintain, use or operate the Equipment in compliance with any applicable law or regulation; (c) breach by Lessee of its covenants pursuant to Section 9 hereof; (d) failure to obtain, maintain and comply with all of the insurance coverages required under this Lease; (e) an inaccuracy in or breach of any representation or warranty by Lessee or any Guarantor in any financial statement, this Lease, any guaranty or any other document relating to this Lease or the Equipment; (f) Borrower does not perform any of its other obligations under this Agreement and this failure continues for ten (10) days after notification to Borrower; (g) the filing of a bankruptcy, insolvency, receivership or similar proceeding petition by or against Lessee or any Guarantor (unless, if involuntary, the proceeding is dismissed within sixty (60) days of the filing thereof); (h) Borrower or any Guarantor defaults under any other agreement with Lender or any of its affiliates or any other lease, loan agreement or other material financing obligation and the applicable grace or cure period has lapsed, (i) Borrower sells, assigns, pledges, encumbers or conveys any of its rights or interests in this Agreement or the Collateral in violation of the terms of this Agreement, or (j) any individual Guarantor dies.

**12. REMEDIES.** Upon any Event of Default, Borrower shall pay, as liquidated damages, to the extent permitted by law, a sum equal to the aggregate of the following: (a) all due and unpaid Installment payments and other sums due under this Agreement plus any accrued and unpaid interest and late charges, if any, (b) the total of all remaining Installment payments due under this Agreement plus (c) interest at the rate of one and one-half percent (1.5%) per month on the foregoing amounts from the date of the Event of Default. Lender shall also have the right to recover from Borrower any expenses paid or incurred by Lender in connection with the enforcement of its rights and remedies under this Agreement, the collection of sums due hereunder, and the repossession, holding, repair, preparing for sale and subsequent sale, lease or other disposition of the Equipment, in all cases including reasonable attorneys' fees of twenty percent (20%) but in no event less than five thousand dollars ($5000) and any other legal expenses incurred (collectively

"Enforcement Expenses"). Lender is hereby authorized and empowered, with the aid and assistance of any person or persons, to enter any premises where the Equipment or any part thereof is, or may be placed, and to assemble and/or remove same and/or to render it unusable and sell and dispose of such Equipment at one or more public or private sales upon at least ten (10) days' written notice to Borrower of such sale. Lender shall apply the proceeds of any such sale towards the payment of all Enforcement Expenses, the liquidated damages specified above, and other indebtedness secured hereby, and if such proceeds are insufficient to fully pay all such items, Borrower agrees to pay Lender any deficiency. Lender shall also have all rights and remedies available under law and all rights and remedies hereunder are cumulative and not exclusive and a waiver by Lender of any breach by Borrower shall not constitute a waiver of future breaches or defaults.

**13. RIGHT OF SETOFF.** Lender reserves and shall have a right of setoff in all Borrower's accounts with Lender or any bank or financial institution affiliated with Lender (whether checking, savings or other account and whether evidenced by a certificate of deposit or not), including all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future; excluding, however, any accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff any and all payments due or that become due as a result of an Event of Default against any and all such accounts and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this Section.

**14. LENDER'S ASSIGNMENT.** Lender may assign any of Lender's interest in and to this Agreement and/or the Collateral, without notice to, or consent from, Borrower. Borrower agrees that if it receives written notice of an assignment from Lender, Borrower shall pay all Installments and other amounts hereunder to such assignee or as instructed by Lender. Borrower also agrees to confirm in writing receipt of notice of any assignment as may be reasonably requested by Lender or assignee. Borrower waives and agrees not to assert against any such assignee any defense, set-off, recoupment claim or counterclaim which Borrower has or may at any time have against Lender for any reason whatsoever.

**15. NOTICES.** All written notices called for herein shall be deemed delivered if and when delivered in person, or 2 business days after sending overnight by a nationally recognized courier service or 5 days after sending by certified mail, return receipt requested to the respective party's address hereon or at such other address as a party may provide in writing to the other from time to time in accordance with written notice hereunder.

**16. SEVERABILITY; SURVIVAL.** If any provision of this Agreement or the application thereof to any party or circumstance is held invalid or unenforceable, the remainder of this Agreement and the application of such provision to other parties or circumstances shall not be affected thereby and to this end the provisions of this Agreement are declared severable. A finding of invalidity or unenforceability in one jurisdiction shall not be conclusive in another jurisdiction. All obligations of Borrower reasonably intended to survive the termination or other ending of this Agreement, including but not limited to Borrower's indemnity and reimbursement obligations, shall survive

**17. ENTIRE AGREEMENT, NO ORAL AGREEMENT.** This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and shall not be amended or modified in any manner except by a document in writing executed by both parties. All prior conversations, agreements and representations relating to this Agreement or to the Equipment or Collateral are of no force and effect.

**18. SECTION HEADINGS.** The section headings in this Agreement do not constitute part of this Agreement, but are for informational purposes only.

**19. FURTHER ASSURANCES, ADDITIONAL DOCUMENTS.** Borrower authorizes Lender to prepare and file UCC financing statements and continuation statements with respect to the Collateral and ratifies any financing statements previously filed. Borrower agrees to pay or reimburse Lender for any filing, recording or taxes in connection with any such filings. Upon demand, Borrower shall deliver to Lender any financial statements and additional information reasonably requested by Lender relating to the Collateral and/or the general financial condition of Borrower. Borrower shall obtain and deliver to Lender and/or promptly execute or otherwise authenticate any documents, filings, waivers, releases and other records, and will take such further action as Lender may reasonably request in furtherance of Lender's rights under this Agreement, and Borrower shall pay or reimburse Lender for any costs relating thereto. In the event that Lessee shall fail or refuse to promptly execute and deliver to Lender such documents, correct manifest errors in this Agreement and any addenda, attachments, exhibits and riders hereto, and after the occurrence of an Event of Default, enforce and compromise claims relating to the Collateral against insurers, any Supplier or other persons; all without any obligation to do so. Lender, in addition to all other rights and remedies provided in this Agreement or otherwise by law or equity permitted, is irrevocably appointed as Borrower's attorney-in-fact authorized by Borrower, but under no duty, to execute Borrower's name on any such documents. Such failure or refusal by Borrower to execute or deliver documents as aforesaid, regardless of whether Lender shall exercise its aforesaid right to execute Borrower's name shall constitute an Event of Default hereunder.

**20. CONTROLLING LAW AND JURISDICTION.** THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF PENNSYLVANIA. BORROWER AGREES THAT ANY ACTIONS OR PROCEEDING TO WHICH LENDER IS A PARTY ARISING DIRECTLY OR INDIRECTLY FROM THIS AGREEMENT, SHALL BE LITIGATED, AT LENDER'S OPTION, IN ANY STATE OR FEDERAL COURT HAVING SITUS WITHIN PENNSYLVANIA OR ANY STATE WHERE ANY ASSIGNEE OF LENDER IS LOCATED, AND THAT SAID COURTS SHALL HAVE JURISDICTION THEREOF, INCLUDING OVER BORROWER.

**21. PROCESSING FEES.** Borrower agrees to pay Lender's expenses and any fees incurred in the processing of this transaction and in the investigation of the credit worthiness of Borrower and Guarantor, if any.

**22. JURY TRIAL WAIVER. BORROWER AND LENDER HEREBY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON THIS AGREEMENT.**

**23. COUNTERPARTS, ELECTRONIC DOCUMENTS.** This Agreement may be executed manually, digitally or electronically in one or more counterparts, each of which shall constitute one and the same agreement. Borrower and Lender intend and agree that both (a) a photocopy and an electronically transmitted pdf or other reproduction of this Agreement which includes a photocopy of Borrower's and Lender's signatures and (b) an electronically signed and emailed or otherwise transmitted or delivered counterpart of this Agreement shall be treated as an original and shall be valid, authentic, and legally binding as the original signed Agreement for all purposes, and shall be admissible in court as evidence of this transaction. Only the original signed counterpart of this Agreement marked "original" by Lender shall be deemed the original tangible chattel paper under the UCC and if this Agreement is signed electronically by Borrower only the counterpart electronically maintained by Lender or the counterpart that bear's Lender's manual signature shall be the authoritative copy of this Agreement. Lender (or any subsequent assignee) may transfer such authoritative copy and a security interest in, and such authoritative copy may be perfected through the transfer and control of such authoritative copy of this Agreement (without any need to transfer the tangible chattel paper copy) and the inclusion of a notation on such authoritative copy that the assignee is the secured party of such record.

**24. MISCELLANEOUS.** No provision of this Agreement may be waived except by the written consent of Lender. Time is of the essence. Borrower or Guarantor shall provide Lender with such corporate resolutions, opinions of counsel, financial statements and other documents as Lender shall reasonably request from time to time. If more than one Borrower is named in this Agreement, the liability of each shall be joint and several. All financial data submitted to Lender is hereby acknowledged and affirmed as true and correct copies of the signed originals. Borrower's indemnity and reimbursement obligations shall survive the cancellation, termination or expiration of this Agreement. Borrower's Obligations under this Agreement are non-cancelable, absolute, irrevocable and unconditional. This Agreement inures to the benefit of, and is binding upon, each of the parties hereto and its successors and permitted assigns. No failure or delay on the part of Lender in exercising any of its options, powers, rights or remedies arising from this Agreement, including but not limited to in the event of an Event of Default, nor any partial or single exercise thereof, shall constitute any waiver by Lender. Any waiver by Lender may only be in a writing signed by its authorized agent.

If any court of competent jurisdiction determines that any provision of this Agreement Section is invalid or unenforceable in whole or in part, such determination, as to such jurisdiction, shall not prohibit Lender from enforcing its rights and establishing its damages sustained as the result of any breach of this Agreement in accordance with the laws of such jurisdiction.

**IN WITNESS WHEREOF,** each of the parties hereto have caused this Agreement to be executed by its duly authorized officer.

| MERIDIAN EQUIPMENT FINANCE LLC | Rejuvenation Trading Group LLC |
|---|---|
| By: _Jody Wagner_ | By: _Abraham Woods III_ |
| Name: Jody Wagner | Name: Abraham Woods III |
| Title: SVP, Director of Operations | Title: MD |
| Address: 9 Old Lincoln Highway, Malvern, PA 19355 | Address: 106 Boston Ave, Suite 103, Altamonte Springs, FL 32701 |
| | Phone: (407) 830-4777    Email: |
| | Contact:    Tax ID No: |

## GUARANTY

With knowledge that Lender will enter into the above Agreement with Borrower in reliance upon the existence of this Guaranty and the validity and enforceability of the obligations and liabilities of the undersigned ("Guarantor") to Lender contemplated hereby, Guarantor hereby unconditionally, absolutely and irrevocably guarantees to Lender the prompt payment and/or performance of all obligations and liabilities of Borrower at any time owing to Lender under the above Agreement, whether direct or indirect, matured or unmatured, primary or secondary, or certain or contingent, including, without limitation, any and all Rent, any payments due during any renewal, any liquidated damages, reasonable attorney's fees, costs and expenses of enforcement and collection incurred by Lender in enforcing Borrower's obligations and liabilities under the above Agreement and all other amounts due under the Agreement, which may at any time be payable in connection with the above Agreement (collectively, the "Obligations"). This Guaranty is a guaranty of payment and performance, and not a guaranty of collection. Guarantor shall not be released from any obligations under this Guaranty for any reason, nor shall such obligations be reduced, diminished or discharged for any reason whatsoever, including but not limited to any modification or waiver of the above Agreement, any adjustment, extension or compromise made by Lender in favor of Borrower or any other person, the application of any payments and receipts, any insolvency, bankruptcy, dissolution, appointment of a receiver for, or other similar proceeding affecting Borrower or Guarantor, any sale or other disposition of any of the Equipment or assets of Borrower, the invalidity, illegality or unenforceability of the above Agreement or any Obligation for any reason whatsoever, any release of Borrower, or any other action or inaction on the part of Lender. Guarantor waives all notices and all defenses to Guarantor's obligations hereunder, whether arising by operation of law, agreement or otherwise, including any defenses that Guarantor may have or assert against the enforcement of this Guaranty or any Obligation based upon suretyship principles or any impairment of the Equipment or other collateral. If any provision of this Guaranty is invalid or unenforceable, the remainder of this Guaranty shall not be affected thereby and the provisions hereof are declared severable. In the event that more than one person executes this Guaranty, each such person shall be jointly and severally liable hereunder. Any action or proceeding to which Guarantor is a party arising directly or indirectly from this Guaranty shall be litigated in any state or federal court in the Commonwealth of Pennsylvania or any state where any assignee of Lender is located, at Lender's choice, and Guarantor consents to the in personam jurisdiction of any such state and federal courts. This Guaranty shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania. **GUARANTOR HEREBY WAIVES ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON THIS GUARANTY OR THE ABOVE AGREEMENT.**

| | | | 3/1/2022 | 10:47:53 AM PS |
|---|---|---|---|
| SIGNATURE: _signature_ | PRINT NAME: Abraham Woods III | DATE: |
| SIGNATURE: | PRINT NAME: | DATE: |



EXHIBIT 1

## Early Commencement Addendum to
## Equipment Finance Agreement

This Early Commencement Addendum to Equipment Finance Agreement ("Addendum") is made by and among Meridian Equipment Finance LLC as "Lender" and Rejuvenation Treatment Center LLC as "Borrower".

3/2/2022

WHEREAS, Lender and Borrower are parties to Equipment Finance Agreement # 114978.001, dated _____ (the "Agreement"), pursuant to which Lender has agreed to finance or refinance the Borrower's purchase of the equipment as described below (the "Equipment"); and

WHEREAS, the Vendor from whom Borrower is purchasing the Equipment (as named below, and below, the "Vendor") requires that a payment be made to it prior to the Equipment being shipped and delivered to Borrower (the "Payment"); and

WHEREAS, Lender, in the ordinary course of its business, would not make a payment to Vendor for the Equipment, either in whole or in part, prior to Borrower's inspection and acceptance of the Equipment; and

WHEREAS, Borrower directs Lender to make the Payment to Vendor and to agree to make and advance such other payments to Vendor as Vendor may require (collectively, the "Lender Obligations") in order to finance the Borrower's purchase of the Equipment, prior to Borrower's inspection and acceptance of the Equipment; and

**WHEREAS, in exchange for the Lender Obligations, Borrower has agreed (i) to commence the Agreement and the Installment payments provided for therein (hereinafter, and inclusive of applicable tax, "Installment Payments"), with full acknowledgment and understanding of its obligations under the Agreement even though the Equipment has not been delivered or inspected, and (ii) that, if Borrower fails or refuses to make the payments to Lender required under the Agreement for any reason, then at Lender's sole election, Lender shall be deemed to have made a loan to Borrower in an amount described in this Addendum, payable upon demand, all upon the terms and conditions set forth herein.**

Now therefore, the parties hereto, expressly intending to be legally bound agree as follows:

1. By executing this Addendum, subject to the terms and conditions of this Addendum and the Agreement, Lender agrees to perform the Lender Obligations and Borrower (i) fully accepts the Equipment and the unconditional obligation to make all payments due to Lender under the terms and conditions of the Agreement and (ii) agrees that the Agreement and the Installment Payments due thereunder, have commenced. Borrower understands that Lender has finalized the Lender Obligations and that Borrower acknowledges final delivery of the Equipment and agrees to commencement of the Installment Payments (the "Final Delivery Date"). Capitalized terms used herein without definition shall have the meaning given given to such terms in the Agreement.

2. Borrower agrees that it does not have the right to terminate the Agreement or reject or return the Equipment to Vendor without Lender's prior express written consent, which consent may be withheld in the sole discretion of Lender. Borrower will continue to make the Installment Payments in a timely manner notwithstanding any nonconformity of the Equipment with the Borrower's specifications and notwithstanding any issues related to delivery and inspection by Borrower. Borrower covenants and agrees that it will not assert as a justification for nonpayment of the Installment Payments any defense that may arise due to nonconformity of the Equipment or issues related to its delivery or inspection, but shall pursue its legal remedies, if any, solely from Vendor. In connection with the foregoing, Borrower further waives all rights of recourse against Lender resulting from, and holds Lender harmless from, any nonconformity of the Equipment to Borrower's specifications or any failure or default related to delivery or inspection of the Equipment including, but not limited to, any breach by Vendor of Vendor's obligations under any agreement.

3. If Borrower fails or refuses to make the Installment Payments to Lender required under the Agreement for any reason (a "Non-Payment Event"), including, but not limited to: a) Vendor's failure to deliver the Equipment to Borrower; b) Borrower's rejection and/or return of the Equipment; or c) a court's determination that Lender may not enforce the Agreement provisions, then at Lender's sole election, Lender, upon payment of the Lender Obligations to Vendor, shall be deemed to have made and completed a loan to Borrower hereunder (the "Loan") as of the date of such election (the "Loan Date") in an amount (the "Loan Amount") equal to the sum of a) the aggregate amount of Installment Payments due on or before the Loan Date that are unpaid; plus b) the present value of all Installment Payments due after the Loan Date, discounted to the Loan Date at an annual rate of interest equal to one percent (1%). The Loan Amount shall bear interest on the unpaid balance at the highest enforceable interest rate permitted by law in the Commonwealth of Pennsylvania. The aforesaid loan shall be evidenced by this Addendum, the Agreement and all other relevant transaction documents and such loan shall be payable on demand in lawful money of the United States of America. Borrower hereby grants to Lender a security interest in the Equipment and any insurance and other proceeds thereof to secure all of Borrower's obligations to Lender under the Loan and Lender may protect, and provide notice of, its interest by filing financing statements authorized under the UCC in all appropriate jurisdictions where such filing is required or recommended to perfect such security interest. At any time after a Non-Payment Event, at Lender's option, Lender may accelerate any balance due under the loan and demand immediate payment of the Loan Amount, together with all accrued and unpaid interest thereon and enforce all of Lender's remedies found in the Agreement. Borrower agrees to pay all of Lender's costs and expenses incurred in collecting the Loan, including reasonable attorney fees of 20% of the outstanding balance with a minimum amount of $1000.00. Notwithstanding anything to the contrary in this Addendum, if Lender elects to enforce the provisions of the Agreement, then Borrower's prompt payment in full of all amounts owing to Lender under the Agreement shall constitute payment in full of all amounts owing to Lender under the Loan.

4. Borrower agree that Lender's obligation is solely to finance the acquisition of the Equipment by Borrower and Lender did not undertake or agree to perform any other function and, as set forth above, acknowledge that neither the Vendor, nor any salesperson of Vendor, is an agent, independent contractor or employee of Lender. If Borrower commences an action, or otherwise asset a claim, against Lender that relates or refers to the Equipment in any fashion or manner, or to the Agreement or any other aspect of the relationship or any other transaction document, Borrower shall be liable for all of Lender's attorney fees and costs incurred in defending that action or proceeding unless a final non-appealable verdict is entered against Lender and in favor of Borrower. Additional sanctions may be awarded by any court if the action is deemed frivolous. Borrower expressly agrees that any such action or claim commenced shall be brought and venued solely in the state and federal courts of the Eastern District of Pennsylvania or in any state where an assignee of Lender is located.

5. THIS ADDENDUM SHALL BE CONSTRUED, GOVERNED, INTERPRETED, AND ENFORCED IN ACCORDANCE WITH THE LAWS OF COMMONWEALTH OF PENNSYLVANIA AND SHALL BE DEEMED TO BE FULLY AND SOLELY EXECUTED, PERFORMED, AND/OR OBSERVED IN THE COMMONWEALTH OF PENNSYLVANIA. THE PARTIES HERETO EXPRESSLY CONSENT TO PERSONAL JURISDICTION OF THE COMMONWEALTH OF PENNSYLVANIA AND ANY STATE WHERE ANY ASSIGNEE OF LENDER IS LOCATED AND BORROWER HEREBY CONSENTS TO PERSONAL JURISDICTION AND VENUE IN THE STATE AND FEDERAL COURTS OF THE EASTERN DISTRICT OF PENNSYLVANIA AND EACH OF SUCH OTHER STATES AND WAIVE ANY RIGHT TO TRANSFER VENUE IN ANY ACTION OR PROCEEDING BROUGHT IN ANY COURT THEREIN, STATE OR FEDERAL, ARISING FROM OR ALLEGING FACTS ARISING FROM THE TRANSACTIONS CONTEMPLATED HEREIN, **AND THE PARTIES HERETO HEREBY EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING HEREUNDER.**

6. The above Recitals are incorporated herein. This Addendum and the Agreement constitute the entire agreements and understanding of the parties with respect to the subject matter herein, and supersedes all previous oral or written agreements or understandings between the parties with respect to the subject matter herein. In the event that any term of this Addendum and the Agreement conflict, the term of this Addendum shall prevail. No modification or amendment shall be valid unless in writing, signed by a duly authorized representative of the party against which the enforcement of such modification or amendment is sought. No term or provision shall be deemed waived and no breach excused, unless such a waiver or consent shall be in writing and signed by a duly authorized representative of the party affected.

7. Borrower and Lender intend and agree that a photocopy or facsimile of this Addendum which includes a photocopy or facsimile of Borrower's and Lender's signatures shall be treated as an original and shall be valid, authentic, and legally binding as the original signature Addendum for all purposes, and shall be admissible in court as evidence of this transaction but shall not be considered chattel paper as defined by the UCC.

| EQUIPMENT DESCRIPTION | VENDOR | AMOUNT ADVANCED |
|---|---|---|
| See Schedule A | BTL Industries Inc | 100% of Vendor Invoice |

**LENDER: Meridian Equipment Finance LLC**

Signature: _Jody Wagner_ (DocuSigned by)
B23C8A3D753A495...

Print Name: Jody Wagner

Title: SVP, Director of Operations

Date: 3/2/2022 | 15:17:56 PM EST

**BORROWER: Rejuvenation Treatment Center LLC**

Signature: _Abraham Woods III_ (DocuSigned by)
C88CE490BE04FB...

Print Name: Abraham Woods, III

Title: MD

Date: 3/1/2022 | 10:47:53 AM PST

Case ID: 240700279

<div align="right">EXHIBIT 1</div>

# REQUEST FOR COPY OF DRIVER'S LICENSE

**IMPORTANT NOTICE:** In an effort to protect you from business fraud and identity theft, and to help the government fight the funding of terrorism and money-laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We will also ask to see a copy of your valid driver's license or other identifying documents.

We require legible and unexpired copies of Driver's Licenses for all Signers and Guarantors as confirmation of identity and signature.

### Place Driver's Licenses for all signers in Box and Copy

*make additional copies of this form as needed for additional signers*



Please return this form with legible driver's license copies for all Lease Signers and Personal Guarantors.

<div align="right" style="color:red">Case ID: 240700279</div>

EXHIBIT 1



## ACH Authorization Form

I, the Customer, hereby authorize and direct Meridian Equipment Finance LLC to initiate periodic debit entries, according to the terms of the Agreement referenced below.  Such debit entries will be made on the scheduled payment date from the Bank account listed below unless scheduled payment date falls on a weekend or holiday, in which case the debit entry will be made on the next business day.

Bank Name: Bank of America

Bank Address: Altamonte

Bank City State, Zip: Altamonte Springs, Florida 32701

Bank Phone: NA

Customer Name: Rejuvenation Treatment Center LLC

Customer Address: 106 Boston Ave, Suite 103 Altamonte Springs, FL 32701

Agreement  #(If known): 114978.001

Bank Account Number: 003067232821

Bank Routing Number: 063000047

Checking* X  Savings_____

This authorization is to remain in effect until the underlying obligations to Meridian Equipment Finance LLC are satisfied OR Meridian Equipment Finance LLC receives notification from me and Meridian Equipment Finance LLC has reasonable time to act upon it, whichever comes first. I understand that if a draft is returned for insufficient funds, my account at Meridian Equipment Finance LLC's discretion may be deleted from the draft program and in such event this agreement becomes null and void. I understand that my account will be debited according to the terms of the Equipment Lease agreement referenced above as long as my Lease remains current. I also understand that Meridian Equipment Finance LLC has the right to terminate the draft program at any time.

Authorized by:

Signature: Abraham Woods 033E...

Name:

Title: MD

Date: 3/1/2022 | 10:47:53 AM PST

**\*If the account to be debited is a CHECKING ACCOUNT, please RETURN A VOIDED CHECK with this authorization to ensure that your request is processed accurately.**



Case ID: 240700279

EXHIBIT 1

## LOAN GUARANTY
### (Entity as Guarantor)

Meridian
Equipment Finance LLC
A SUBSIDIARY OF MERIDIAN BANK

Finance Agreement # 114978.001

## BETWEEN: Meridian Equipment Finance LLC ("LENDER")

## AND: Rejuvenation Treatment Center LLC ("BORROWER")

1. **CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, herein acknowledged as sufficient and received, the undersigned guarantor (individually, and collectively if more than one, "Guarantor") absolutely, unconditionally and irrevocably guarantees full and punctual payment and the satisfaction of all obligations of Borrower to Lender under and arising from the above referenced equipment finance agreement ("Agreement"). This is a guaranty of payment and performance. Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated under the Agreement or against any collateral securing same. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under and arising from the Agreement. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing. A failure by Guarantor to meet its obligations hereunder shall be a further Event of Default under the Agreement. Among other things, Guarantor agrees to pay all interest charges, late charges, attorney's fees and any other costs or expenses incurred by Lender in enforcing the Agreement and Lender's rights thereunder.

2. **WAIVER OF NOTICE OF MODIFICATION OF AGREEMENT.** Guarantor hereby agrees that at any time and from time to time without notice to Guarantor, the time for the Borrower's performance of or compliance with any of its obligations contained in the Agreement may be extended or such performance or compliance may be waived by Lender; such Agreement may from time to time be amended including for the purpose of adding any provision thereto or changing in any manner the rights of Lender or of Borrower thereunder, payment of any sums due or to become due under such Agreement may be extended, in whole or in part; and the terms of such Agreement may be waived by the Lender in its sole discretion, all without affecting the liability of the Guarantor hereunder.

3. **LENDER REMEDIES.** Lender may pursue its rights and remedies under this Guaranty and shall be entitled to payment hereunder and to enforce all of its other rights hereunder notwithstanding any other guaranty of, or security for, all or any part of the obligations of Borrower under the Agreement and notwithstanding any action taken or omitted to be taken by Lender to enforce any of its rights or remedies under such other guaranty or with respect to any other security, or any payment received thereunder, and the Guarantor shall not be subrogated, in whole or in part, to the rights of Lender against Borrower under such Agreement until Lender shall have been paid in full all such sums as are at any time payable by Borrower under such Agreement.

4. **WARRANT OF ATTORNEY. THE FOLLOWING SETS FORTH A WARRANT OF AUTHORITY FOR ANY ATTORNEY TO CONFESS JUDGMENT AGAINST GUARANTOR. IN GRANTING THIS WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST GUARANTOR, GUARANTOR, FOLLOWING CONSULTATION WITH (OR DECISION NOT TO CONSULT WITH) COUNSEL, AND WITH KNOWLEDGE OF THE LEGAL EFFECT HEREOF, KNOWINGLY, INTENTIONALLY AND VOLUNTARILY HEREBY WAIVES ANY AND ALL RIGHTS GUARANTOR HAS, OR MAY HAVE, TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING BEFORE ENTRY OF JUDGMENT UNDER THE CONSTITUTIONS AND LAWS OF THE UNITED STATES AND THE COMMONWEALTH OF PENNSYLVANIA. GUARANTOR ACKNOWLEDGES THAT, PURSUANT TO THIS WARRANT OF ATTORNEY, LENDER IS AUTHORIZED TO ENTER A JUDGMENT AGAINST GUARANTOR WHICH WILL GIVE LENDER A LIEN AGAINST GUARANTOR'S REAL PROPERTY AND WHICH MAY PERMIT LENDER TO SEIZE GUARANTOR'S PERSONAL PROPERTY INCLUDING, WITHOUT LIMITATION, GUARANTOR'S BANK ACCOUNTS. GUARANTOR SPECIFICALLY ACKNOWLEDGES THAT LENDER HAS RELIED ON THIS WARRANT OF ATTORNEY IN GRANTING THE AGREEMENT TO BORROWER. UPON THE OCCURRENCE OF AN EVENT OF DEFAULT BY BORROWER UNDER THE AGREEMENT, GUARANTOR AUTHORIZES ANY PROTHONOTARY OR ANY ATTORNEY OR ANY CLERK OF ANY COURT OF RECORD TO APPEAR FOR AND ENTER JUDGMENT AGAINST GUARANTOR AT ANY TIME AND FROM TIME TO TIME FOR SUCH AMOUNT AS MAY BE OWING UNDER THE AGREEMENT, INCLUDING, BUT NOT LIMITED TO LOAN PAYMENTS AND THE RESIDUAL PAYMENT, IF ANY, WITH OR WITHOUT DECLARATION, WITH COSTS OF SUIT, WITHOUT STAY OF EXECUTION, AND WITH ATTORNEYS' FEES OF FIFTEEN PERCENT (15%) BUT IN NO EVENT LESS THAN ONE THOUSAND DOLLARS ($1000.00) AND GUARANTOR RELEASES ALL ERRORS IN CONNECTION WITH SUCH ACTION AND WAIVES ALL RIGHTS OF APPEAL WITH RESPECT TO THIS GUARANTY AS A WARRANT OF ATTORNEY. THE ATTORNEY'S FEES PERCENTAGE AUTHORIZED BY THIS WARRANT SHALL NOT BE A CAP AND GUARANTOR ACKNOWLEDGES AND AGREES THAT SHOULD THE ATTORNEY'S FEES INCURRED EXCEED THE AMOUNT IN THE CONFESSED JUDGMENT IN CONNECTION WITH COLLECTING THIS JUDGMENT AND/OR LITIGATING THE JUDGMENT, THAT THE DAMAGES SET FORTH IN THE CONFESSED JUDGMENT MAY BE REASSESSED TO RECOVER THE ACTUAL ATTORNEY'S INCURRED AND ANY OTHER EXPENSES, COSTS OR OTHER ITEMS THAT MIGHT HAVE BECOME DUE UNDER THE LEASE AND GUARANTY. THIS CONFESSION OF JUDGMENT AND WARRANT OF ATTORNEY SHALL NOT BE EXHAUSTED BY THE USE OR ATTEMPTED USE THEREOF BUT SHALL CONTINUE IN FULL FORCE AND EFFECT AND MAY BE EXERCISED AS OFTEN AS NECESSARY UNTIL ALL AMOUNTS AND OBLIGATIONS OWING BY GUARANTOR TO LENDER PURSUANT TO THE PROVISIONS OF THIS GUARANTY OR ON ACCOUNT OF THE EQUIPMENT AND/OR PER THE AGREEMENT SHALL HAVE BEEN PAID AND PERFORMED IN FULL. ANYTHING CONTAINED HEREIN TO THE CONTRARY NOTWITHSTANDING, LENDER AGREES NOT TO LEVY, EXECUTE OR GARNISH ANY RESIDENTIAL REAL PROPERTY AS PROHIBITED BY THE ACT OF JANUARY 30, 1974 (NO.6) AND REGULATIONS THEREUNDER OF THE GUARANTOR.
GUARANTOR ACKNOWLEDGES AND AGREES THAT: (A) THIS WARRANT OF ATTORNEY TO CONFESS JUDGMENT IS BEING EXECUTED IN CONNECTION WITH A COMMERCIAL TRANSACTION, (B) LENDER AND ITS ATTORNEY'S EXERCISE OF THIS WARRANT OF ATTORNEY AUTHORIZING THE ENTRY OF JUDGMENT BY CONFESSION AGAINST GUARANTOR UNDER THE CIRCUMSTANCES PROVIDED FOR HEREIN WOULD BE AND IS IN ACCORDANCE WITH THE REASONABLE EXPECTATIONS OF GUARANTOR, (C) IN EXERCISING THE WARRANT OF ATTORNEY, LENDER AND ITS ATTORNEY ARE ACTING FOR THE SOLE BENEFIT OF LENDER, AND (D) NEITHER LENDER NOR ITS ATTORNEY DO NOT AND SHALL NOT HAVE ANY OF THE DUTIES TO GUARANTOR SET FORTH IN PARAGRAPH 20 PS 5601.3(b) OR ANY OTHER STATUTE IMPOSING DUTIES ON THE PERSON(S) EXERCISING THE WARRANT OF ATTORNEY, ALL OF WHICH ARE EXPRESSLY WAIVED.**

Case ID: 240700279

5. **ASSIGNMENT OF GUARANTY.** Lender may assign this Guaranty or any rights and powers hereunder with any assignment of the Agreement or any sums due or to become due, or any rights, claims, powers and remedies thereunder and, in the event of such assignment, the assignee shall have the same rights and remedies as if originally named herein. Guarantor hereby waives notice of any such assignment.

6. **WAIVER OF PRESENTMENT, DEMAND AND PROTEST.** Guarantor hereby waives diligence, presentment of any instrument, demand for payment, protest and notice of nonpayment or protest and the performance of each and every condition precedent to which Guarantor might otherwise be entitled by law and notice of the creation or accrual of any of the obligations of Borrower to Lender under such Agreement and all demands whatsoever.

7. **INDEPENDENT OBLIGATION.** Lender's obligations shall be deemed to have been created, contracted or incurred in reliance upon this Guaranty. The obligations of the Guarantor are joint and several, and are independent of the obligations of the Borrower. The obligations of Guarantor shall also be joint and several with those of any other guarantor under any other guaranty. Lender shall not be required to proceed against Borrower or the Equipment or enforce any other remedy whatsoever before proceeding against Guarantor.

8. **UNCONDITIONAL GUARANTY.** This Guaranty shall be construed as a continuing, absolute and unconditional guaranty of payment irrespective of the validity, or enforceability of (a) any of the obligations of Borrower to Lender; or (b) the Agreement; or (c) any security therefore, and notwithstanding any present or future law or order of any government or agency which would reduce, amend or otherwise affect any obligation of Borrower or other obligor or to vary any terms of payment, and irrespective of any other circumstance which might otherwise constitute a legal or equitable discharge or a guarantor. Guarantor absolutely, unconditionally and irrevocably guarantees and promises to pay Lender the prompt, complete and full payment and performance when due, whether at stated maturity, by acceleration or otherwise, all of Borrower's present and future indebtedness and obligations, whether monetary or non-monetary, under the Agreement. As used herein the term indebtedness shall have the most comprehensive meaning and shall include all current and future obligations due Lender by Borrower. This is a guaranty of payment and not of collection. Guarantor agrees that this Guaranty shall remain in full force and effect and be reinstated if at any time payment or performance of any of the payments or obligations guaranteed by this Guaranty is rescinded, reduced or must otherwise be restored or returned to Borrower, all as though such payment or performance had not been made.

9. **LAW AND JURISDICTION.** THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF PENNSYLVANIA. GUARANTOR AGREES THAT ANY ACTIONS OR PROCEEDING TO WHICH LENDER IS A PARTY ARISING DIRECTLY OR INDIRECTLY FROM THIS GUARANTY, SHALL BE LITIGATED, AT LENDER'S OPTION, IN ANY STATE OR FEDERAL COURT HAVING SITUS WITHIN PENNSYLVANIA OR ANY STATE WHERE ANY ASSIGNEE OF LENDER IS LOCATED, AND THAT SAID COURTS SHALL HAVE JURISDICTION THEREOF, INCLUDING OVER GUARANTOR.

10. **WAIVER OF JURY. GUARANTOR HEREBY KNOWINGLY, WILLINGLY AND VOLUNTARILY WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH THE GUARANTOR AND LENDER MAY BE PARTIES ARISING OUT OF OR IN ANY WAY PERTAINING TO THE AGREEMENT OR THIS GUARANTY. GUARANTOR AUTHORIZES LENDER TO FILE THIS PROVISION WITH THE CLERK OR JUDGE OF ANY RELEVANT COURT. GUARANTOR UNDERSTANDS THAT THIS WAIVER IS A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST PARTIES TO SUCH ACTIONS OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS GUARANTY. GUARANTOR ACKNOWLEDGES THAT NO REPRESENTATION OF FACT OR OPINION HAS BEEN MADE BY LENDER TO INDUCE THIS WAIVER OF JURY TRIAL. GUARANTOR ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS GUARANTOR AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL OF ITS OWN FREE CHOICE AND THAT IT HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL, OR HAS VOLUNTARILY WAIVED SUCH OPPORTUNITY.**

11. **MISCELLANEOUS.** This Guaranty constitutes the entire agreement between the parties with respect to the matters concerning the subject matter hereof and supersede all prior undertakings and agreements, written or oral, between the parties. All provisions of this Guaranty are material. Time is of the essence. No provision of this Guaranty may be waived, changed or terminated except by the written consent of Lender. Guarantor shall provide Lender financial statements and other documents as Lender shall reasonably request from time to time. If more than one Guarantor is named in this Guaranty, the liability of each shall be joint and several. Any provisions of this Guaranty which are unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such unenforceability without invalidating the remaining provisions hereof, and any such unenforceability shall not render unenforceable such provisions in any other jurisdiction. This Guaranty shall inure to the benefit of and be binding upon the parties hereto and their heirs, personal representatives, successors and assigns. Guarantor is and will remain in compliance with all laws and regulations applicable to it, including the USA Patriot Act and all laws, regulations, orders and government guidance on Bank Secrecy Act compliance and the prevention and detection of money laundering violations and terrorist financings and shall ensure that Guarantor and any person or entity that directly or indirectly owns Guarantor are not listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("**OFAC**") or any other similar lists maintained by OFAC or any other governmental entity.

Intending to be legally bound, Guarantor signs below:

**GUARANTOR**

Abraham L. Woods, III, M.D., P.A.
(GUARANTOR COMPANY NAME)

BY:
SIGNATURE OF AUTHORIZED OFFICER
   Abraham Woods III

PRINT SIGNER'S NAME + TITLE
   MD

COMPANY ADDRESS
   106 Boston Ave, Suite 103, Altamonte Springs

ATTEST _____

EXHIBIT 1



**Meridian Equipment Finance LLC**
A SUBSIDIARY OF MERIDIAN BANK

## Schedule A
**Equipment Finance Agreement #: 114978.001**

**BETWEEN: Meridian Equipment Finance LLC ("LENDER")**

**AND: Rejuvenation Treatment Center LLC ("BORROWER")**

| Vendor | Equipment Location | Equipment Description |
|---|---|---|
| BTL Industries Inc | 106 Boston Ave, Suite 103<br>Altamonte Springs, FL 32701 | 1 - Esmella s/n: 009900B004870/22930B002747 |

---

**LENDER: MERIDIAN EQUIPMENT FINANCE LLC**

By: _____
DocuSigned by:
B23C5A3D753A495...

Print Name: Jody Wagner

Title: SVP, Director of Operations

Date: 3/2/2022 | 15:17:56 PM EST

**BORROWER: Rejuvenation Treatment Center LLC**

By: _____
DocuSigned by:
C585C4630DBD4FB...

Print Name: Abraham Woods III

Title: MD

Date: 3/1/2022 | 10:47:53 AM PST

EXHIBIT 1

**DocuSign**

## Certificate Of Completion

Envelope Id: 4378AD59AEA04738AD7004071D55AE4F                                          Status: Completed
Subject: Please DocuSign: Rejuvenation Treatment Contract Documents (1).pdf
Source Envelope:
Document Pages: 11                          Signatures: 9                                Envelope Originator:
Certificate Pages: 7                        Initials: 0                                  Robyn Lance
AutoNav: Enabled                                                                         9 Old Lincoln Highway
EnvelopeId Stamping: Enabled                                                             Malvern, PA 19355
Time Zone: (UTC-05:00) Eastern Time (US & Canada)                                       rlance@meridianef.com
                                                                                         IP Address: 50.235.174.1

## Record Tracking

Status: Original                            Holder: Robyn Lance                          Location: DocuSign
       3/1/2022 11:01:57 AM                         rlance@meridianef.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Abraham Woods III<br>pac106@aol.com<br>MD<br>Security Level: Email, Account Authentication<br>(None), Authentication | <br>C585C4630DBD4FB...<br>Signature Adoption: Drawn on Device<br>Using IP Address: 172.225.202.144<br>Signed using mobile | Sent: 3/1/2022 11:05:52 AM<br>Viewed: 3/1/2022 1:17:06 PM<br>Signed: 3/1/2022 1:47:53 PM |

**Authentication Details**
ID Check:
    Transaction: 31014644079645
    Result: passed                          Question Details:
    Vendor ID: LexisNexis                    passed   vehicle.historical.color.real
    Type: iAuth                              passed   person.age.real
    Recipient Name Provided by: Recipient    passed   vehicle.color.real
    Information Provided for ID Check: Address,   passed   property.association.single.fake
    SSN9, SSN4, DOB                          failed   property.street.in.city.real
    Performed: 3/1/2022 1:16:50 PM           passed   corporate.association.real

ID Check:
    Transaction: 31014644832815
    Result: passed                          Question Details:
    Vendor ID: LexisNexis                    passed   vehicle.color.real
    Type: iAuth                              passed   county.lived.single.real
    Recipient Name Provided by: Recipient    passed   corporate.association.fake
    Information Provided for ID Check: Address,   passed   property.city.real
    SSN9, SSN4, DOB                          passed   property.association.single.real
    Performed: 3/1/2022 1:42:24 PM           passed   county.lived.single.real
**Electronic Record and Signature Disclosure:**
    Accepted: 3/1/2022 1:17:06 PM
    ID: 3a083d32-121f-48cc-b7a1-f28680719921
    Company Name: Meridian Equipment Finance, LLC

| | | |
|---|---|---|
| Robyn Lance<br>rlance@meridianef.com<br>Leasing<br>Meridian Bank<br>Security Level: Email, Account Authentication<br>(None) | **Completed**<br><br>Using IP Address: 50.235.174.1 | Sent: 3/1/2022 1:47:55 PM<br>Viewed: 3/1/2022 1:50:13 PM<br>Signed: 3/1/2022 1:50:59 PM |

**Electronic Record and Signature Disclosure:**
    Not Offered via DocuSign

Case ID: 240700279

EXHIBIT 1

| Signer Events | Signature | Timestamp |
|---|---|---|
| Jody Wagner<br>jwagner@meridianef.com<br>SVP, Director of Operations<br>Meridian Equipment Finance<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>B23CBA3D763A495... <br>Signature Adoption: Uploaded Signature Image<br>Using IP Address: 50.235.174.1 | Sent: 3/1/2022 1:51:01 PM<br>Viewed: 3/2/2022 3:11:20 PM<br>Signed: 3/2/2022 3:17:56 PM |

**Electronic Record and Signature Disclosure:**
    Not Offered via DocuSign

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Philly Pirovitz<br>Robert@leasepointFG.com<br>Security Level: Email, Account Authentication (None) | COPIED | Sent: 3/1/2022 11:05:50 AM<br>Viewed: 3/1/2022 11:07:20 AM |

**Electronic Record and Signature Disclosure:**
    Not Offered via DocuSign

| | | |
|---|---|---|
| Tom Haflett<br>thaflett@meridianef.com<br>Security Level: Email, Account Authentication (None) | COPIED | Sent: 3/1/2022 11:05:51 AM |

**Electronic Record and Signature Disclosure:**
    Not Offered via DocuSign

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 3/1/2022 11:05:51 AM |
| Certified Delivered | Security Checked | 3/2/2022 3:11:20 PM |
| Signing Complete | Security Checked | 3/2/2022 3:17:56 PM |
| Completed | Security Checked | 3/2/2022 3:17:56 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Case ID: 240700279

Parties agreed to: Abraham Woods III

## ESIGN CONSENT TO ELECTRONIC RECEIPT OF DOCUMENTS

### Disclosure

From time to time, Meridian Bank. Meridian Equipment Finance LLC, Meridian Wealth Partners LLC and/or such other subsidiary or other affiliate of Meridian Bank, as applicable to your dealings with us ( "we" or "us") may be required by law to provide certain written notices, disclosures or other documents (sometimes herein "documents") or obtain certain consents. Described below are the terms and conditions for providing to you, the authorized person giving this DocuSign consent ("you" or "your"), such documents electronically through DocuSign Inc. We seek your consent to use such electronic means throughout our relationship with you. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and you understand and agree to the below terms and conditions, please confirm that by clicking the 'agree to the use of electronic records and signatures' button where prompted.

### Getting paper copies

At any time, you may request from us a paper copy of any documents provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign signer account, you may access them for a limited period of time after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents, you may request delivery of such paper copies from us by following the procedure described below. You will not be charged a fee for such paper copies.

### Withdrawing your consent

If you decide to receive documents from us electronically, you may at any time change your mind and tell us that thereafter you want to receive documents only in paper format. How you must inform us of your decision to receive future notices and disclosures in paper format and to withdraw your consent to receive documents electronically as described below.

### Consequences of changing your mind

If you elect to receive documents only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required documents to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such documents. To indicate to us that you are changing your mind, you must follow instructions described below.

### Documents will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of

Case ID: 240700279

EXHIBIT 1

you inadvertently not receiving any such documents, we prefer to provide all documents to you by the same method and to the same address that you have given us. Thus, you can receive the documents electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the documents electronically from us.

**How to contact us:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of the documents, and to withdraw your prior consent to receive documents electronically as follows:

For Meridian Bank, consumer lending or deposit accounts:

To contact us by phone, call Customer Support at (866) 327-9199.

To contact us electronically you may visit the contact page at our Meridian Bank website: https://www.meridianbanker.com/contact-us/.

Our mailing address is:
Meridian Bank
9 Old Lincoln Highway
Malvern, PA 19355

For Meridian Equipment Finance LLC:

To contact us by phone, call our office at (484) 971-6240.

To contact us electronically you may visit the contact page at our Meridian Equipment Finance, LLC website:https://www.meridianef.com/contact-us/.

Our mailing address is:
Meridian Equipment Finance
9 Old Lincoln Highway
Malvern, PA 19355

For Meridian Wealth Partners, LLC:

To contact us by phone, call our office at (610) 272-4700.

To contact us electronically you may visit the contact page at our Meridian Wealth Partners, LLC website: https://www.meridianwealthpartners.com/contact-us/.

Our mailing address is:
Meridian Wealth Partners LLC

Case ID: 240700279

EXHIBIT 1

653 Skippack Pike, Suite 210
Blue Bell, PA 19422

**To advise of your new e-mail address**

To let us know of a change in your e-mail address where we should send notices and disclosures electronically to you, you may sign on to your online account and change the email address on record for you in the "update my contact information" field.

For Consumer Lending or Deposit Accounts:

Call Customer Support at (866) 327-9199.
Contact us electronically via our website at https://www.meridianbanker.com/contact-us/

For Meridian Equipment Finance, LLC:

Call our office at (484) 971-6240
Contact us electronically via our email at info@MeridianEF.com

For Meridian Wealth Partners, LLC:

Call our office at (610) 272-4700
Contact us electronically via our email at contactus@meridianwealthpartners.com

We reserve the right to take necessary steps to ensure your identity by calling the telephone number in our files to ask security questions or by emailing your former email address to notify you of the change.

In addition, you must notify DocuSign, Inc. to arrange for your new email address to be reflected in your DocuSign account by following their process for changing e-mail in the DocuSign system.

**To request paper copies from Meridian Bank**

To request delivery from us of paper copies of the documents previously provided by us to you, call the following number:

For Consumer Lending:
Call Customer Support at (866) 327-9199

For Meridian Equipment Finance, LLC:
Call our office at (484) 971-6240.

For Deposit Accounts:
Call Customer Support at (866) 327-9199

Case ID: 240700279

For Meridian Wealth Partners, LLC:
Call our office at (610) 272-4700

**To withdraw your consent with Meridian Bank**

To inform us that you no longer want to receive future documents electronically you may:

1. decline to sign a document from within your DocuSign session, and press "continue" on the subsequent page, or you may;


For Consumer Lending:
To contact us by phone call Customer Support at (866) 327-9199
To contact us electronically you may sign on to your Meridian Bank website:
https://www.meridianbanker.com/contact-us/

For Meridian Equipment Finance, LLC:
To contact us by phone call our office at (484) 971-6240
To contact us electronically you may contact us via our email: info@MeridianEF.com

For Deposit Accounts:
To contact us by phone call Customer Support at (866) 327-9199
To contact us electronically you may sign on to your Meridian Bank website:
https://www.meridianbanker.com/contact-us/

For Meridian Wealth Partners, LLC:
To contact us by phone call our office at (610) 272-4700
To contact us electronically you may contact us via our email:
contactus@meridianwealthpartners.com

The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process because we will need first to send the documents to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such documents.

**Required hardware and software**

System Requirements - DocuSign eSignature User Guide | DocuSign Support Center

**Acknowledging your access and consent to receive documents electronically**

To confirm to us that you can access this document being sent to you now electronically, which will be similar in process to other electronic documents that we will provide to you, please verify that you were able to read this document and that you also were able to print on paper or electronically save this document for your future reference and access or that you were able to e-mail this document to an address where you will be able to print on paper or save it for your

Case ID: 240700279

EXHIBIT 1

future reference and access. Further, if you consent to receiving documents electronically on the terms and conditions described above, please let us know by clicking the 'I agree to the use electronic records and signatures' checkbox within your DocuSign session.

By checking the 'I agree to use electronic records and signatures', I confirm that:

- I can access and read this DocuSign Consent To Use Of Electronic Signatures and Records; and
- I can print on paper or electronically save or send this document to a place where I can print it, for future reference and access; and
- Until or unless I notify Meridian Bank as described above, I consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by Meridian Bank during the course of my relationship with Meridian Bank.

EXHIBIT 1

**INVOICE**

BTL Industries, Inc.
362 Elm Street
Marlborough, MA 01752
Phone (866) 285-1656 Fax (888) 499-2502
www.btlnet.com; info@btlnet.com

| Date | Invoice # |
|------|-----------|
| 2/24/2022 | 27795 |

**Bill to:**
Rejuvenation Treatment Center
106 Boston Avenue
Suite 103
Altamonte Springs, FL 32701

**Ship to:**
Rejuvenation Treatment Center
106 Boston Avenue
Suite 103
Altamonte Springs, FL 32701

| PO Number | Rep | Ship | Ship Via |
|-----------|-----|------|----------|
| | Kris Huston | | TransGroup |

| Sales Zone |
|------------|
| East |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 1 | EMSELLA | S/N 09900B004870 / 29930B002747 | $159,000.00 | $159,000.00 |
| 1 | Shipping | | $1,190.00 | $1,190.00 |

| | | |
|---|---|---|
| Subtotal | | $160,190.00 |
| Taxes | 7.0000% | $11,213.30 |
| Balance Due | | $171,403.30 |

Case ID: 240700279

EXHIBIT 1



Case ID: 240700279

EXHIBIT 1

5:24



🔒 dg.dhgate.com

I'm shopping for...         Hi, Sade_RkK
My DHgate ∨    

Favorites    Dropshipping    Messages    DHpay Account    My Coins

rder Detail (31074532242) 🖨    Awaiting Payment    Awaiting Shipment    Awaiting Confirm

Please review this transaction.

You could:    **Post Review**    **View Review**    **Re-order**

Order Information    Order Finance    Tracking Item

| | | | |
|---|---|---|---|
| Order Number: | 31074532242 | Order Time: | 2023-12-11 11:44:29 |
| Order Amount: | US $4,081.68 | Order Status: | Closed |
| Ship Via: | UPS | Seller Information: | powerfullaser |
| Payment Status: | This order was paid. | Contact Email: | Sadejo21@aol.com |

You will get  204  coins when order completed   Check coins details

**Shipping Address**

Patient ①

[address redacted] Orlando, Florida, United States, 32805

[redacted]

[redacted]

**Item Information**

| Item Description | Price | Quantity | Amount |
|---|---|---|---|
| 110V US PLUG | US $4,111.68 / Piece | 1 Piece | US $4,111.68 |
| | Discount 19% OFF | | |

New High Quality Mens Happiness Chair Pelvic Floor Muscle Postpartum Repair Magnetic Slimming Muscle Building Machine

Case ID: 240700279

EXHIBIT 1

5:26   

Done 🔒 **dg.dhgate.com** A A ↻

 

**MULTI-TIER DISCOUNTS** $3 OFF EVERY $40 SPENT (Max $30) shop now ▸

New Buyer Coupon | $ | Customer Service ⌄ | Save more | United States / USD ⌄ | Translate ⌄

DH**gate**.com ≡  I'm shopping for... 🔍 Hi, Sade_RkK My DHgate ⌄ ♡ 🕘 🛒

My DHgate | My Orders | Favorites | Dropshipping | Messages | DHpay Account | My Coins | Checkout/Affiliate Account

New High Quality Metis Happiness Chair Pelvic Floor
Muscle Postpartum Repair Magnetic Slimming Muscle
Building Machine (899045311)

    
You cannot Choose Shipping from(China)   Options(US 110V)

**Sold By**
PowerfulLaser
116 Transactions
98.5% Positive Feedback
Detailed seller ratings ▾
Visit Store    Favorite Store



Price: **US $4,111.68** / Piece
US $5,489.10 / Piece

Quantity: 1 Piece

Seller ⊗ Return Policy ⊗ On-time Delivery in 20
Guaranteed: days

**Contact Seller**
✉ Message
💬 Online Chat

    

< ◀ ▶ >

 🄵 🄶 🄿 📌 🄱

ℹ Now look at the information you purchased. Bought this item on
2023-12-11

Re-order          View this item

**Item Description**

Case ID: 240700279

EXHIBIT 1

Patient ①



Case ID: 240700279

EXHIBIT 1



Case ID: 240700279

EXHIBIT 1



Case ID: 240700279