IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MERIDIAN EQUIPMENT FINANCE, LLC** | : | |
| | : | **CIVIL ACTION** |
| v. | : | No. 24-6775 |
| | : | |
| **REJUVENATION TREATMENT** | : | |
| **CENTER, LLC d/b/a CENTER FOR** | : | |
| **UROLOGY,** *et al.* | : | |

**McHUGH, J.**                                                                                       **October 1, 2025**

**MEMORANDUM**

**I.     Relevant Background**

This case is about the breach of a commercial lease agreement.  Plaintiff is Meridian Equipment Finance, LLC, the Lender.  Defendants are (1) Dr. Abraham Woods, III, in his individual capacity, (2) Abraham Woods, III, M.D., PA, a corporate entity, and (3) Rejuvenation Treatment Center, LLC d/b/a Center for Urology ("RTC"), Dr. Woods's medical practice.

In March 2022, RTC entered into an Equipment Finance Agreement ("Agreement") with Plaintiff to purchase a piece of medical technology.  Mot. for Summ. J., Ex. A, ECF 36-1 at 3.[1] Simultaneously, Dr. Woods signed a Guaranty in his individual capacity, embedded at the bottom of the Agreement, wherein Dr. Woods personally guaranteed all payments and outstanding debt owed under the Agreement.  *Id.* at 4.  Separately, Dr. Woods also executed a Corporate Guaranty, which he signed as an agent of his corporate entity, binding his corporate entity as a co-guarantor. *Id.* at 9.

---

[1] Page numbers reflect pagination designated by the ECF system.

The Agreement requires prompt and timely payment and allows for acceleration upon default. *Id.* at 3, ¶ 12. RTC initially complied with the Agreement, making 22 timely payments between March 2022 and April 2024 totaling $63,553.98. *Id.* at 27. But RTC subsequently missed 44 payments, resulting in a default. *Id.* at 29. There is currently an unpaid balance of $146,910.38. In addition to the contractual balance due for the equipment, the Agreement also provides for reasonable attorneys' fees set at 20% of the debt, amounting to $29,382.08, as well as costs in the amount of $395.23. *Id.* at 3-4, ¶ 12. Accordingly, the total amount due under the Agreement's terms is $176,687.69.

I entered default judgment against RTC on May 21, 2025, in the total amount of $176,687.69. Default J. Order, ECF 28. Plaintiff now moves for summary judgment against Dr. Woods individually, seeking to establish liability premised on Dr. Woods's individual Guaranty of the Agreement.

## II.     Standard of Review

This Motion is governed by the well-established standard for summary judgment set forth in Federal Rule of Civil Procedure 56(a), as described by *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III.    Discussion

There are no material facts in dispute, nor does either party contest the validity of the Agreement or Guaranty. Instead, the parties primarily dispute whether Dr. Woods can be held individually liable as a guarantor. Because Dr. Woods signed the Guaranty in his individual capacity, I conclude that he can.

### A. Dr. Woods is Individually Bound by the Guaranty

In Pennsylvania, "[i]f the court determines that a contract is clear, or unambiguous, then it construes the contract as a matter of law." *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1424 (3d Cir. 1994). "[W]hen the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982).[2]

The Guaranty is entirely clear. It provides that the "Guarantor hereby unconditionally, absolutely and irrevocably guarantees to Lender the prompt payment and/or performance of all obligations and liabilities of Borrower at any time owing to Lender under the above Agreement," including "any liquidated damages, reasonable attorneys' fees, costs and expenses of enforcement and collection incurred by Lender in enforcing Borrower's obligations and liabilities under the above Agreement." Mot. for Summ. J., Ex. A, ECF 36-1 at 4 (cleaned up). The Guaranty thus unequivocally covers the full amount due under the Agreement, including attorneys' fees and costs.

The "Borrower" under the Agreement was Rejuvenation Treatment Center, LLC. *Id.* at 3. Dr. Woods signed on its behalf. *Id.* at 4. At the bottom of the Agreement itself, there is a box entitled "Guaranty." *Id.* The Guaranty begins with an express statement that the loan is being offered "in reliance upon the existence of this Guaranty and the validity and enforceability of the obligations of the undersigned 'Guarantor.'" *Id.* There is a digital signature for Abraham Woods

---

[2] Plaintiff strangely cites to New Jersey law in its briefing. But the Guaranty contains a choice-of-law provision dictating the use of Pennsylvania law, the case is being litigated in Pennsylvania, and Plaintiff is based in Pennsylvania. Without any party based in New Jersey or any conceivable justification to apply New Jersey law, I instead look to Pennsylvania contract law.

III, without any reference to his corporate entity. *Id.* This unambiguously establishes Dr. Woods as an individual guarantor of the Agreement. This is reinforced by the fact that there is a separate document entitled "Loan Guaranty," to which Dr. Woods also affixed his digital signature, this time explicitly on his corporate entity's behalf. *Id.* at 8-9. Given these documents, there is no fact in dispute: Dr. Woods unambiguously guaranteed the Agreement, both individually *and* on behalf of his corporate entity. And in the absence of any credible allegations of fraud or coercion, Dr. Woods is personally bound by the terms of the contract to which he is a signatory. *See Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983) (failure to read a contract does not warrant avoidance or nullification of its provisions); *Bollinger v. Cent. Pennsylvania Quarry Stripping & Constr. Co.*, 229 A.2d 741, 742 (Pa. 1967) ("Once a person enters into a written agreement he builds around himself a stone wall, from which he cannot escape merely by asserting he had not understood what he was signing.").

### B. Calculation of Damages

Defendant contends that he does not understand the method used to calculate the total balance due. But Plaintiff's claimed balance is drawn directly from the Agreement's plain terms and supported by a straightforward accounting detailing the payments that RTC made and missed. Defendant fails to bring forth any evidence to challenge the number of payments made or the calculation method, beyond asserting general confusion. As noted in my prior order entering default judgment, Default J. Order, ECF 28, "[i]f Plaintiff's statement of account was erroneous, Defendant could readily dispute the amount claimed through its own payment records." I find that the calculation of damages is clear and aptly supported with credible documentation.

Pursuant to the Agreement, the balance owed is $146,910.38, a value that credits Defendant for $63,553.98 of completed payments. As to attorneys' fees, the Agreement provides that the

"Lender shall also have the right to recover from Borrower any expenses paid or incurred by Lender in connection with the enforcement of its rights and remedies under this Agreement . . . in all cases including reasonable attorneys' fees of twenty percent (20%) but in no event less than five thousand dollars ($5000) and any other legal expenses incurred." Mot. for Summ. J., Ex. A, ECF 36-1 at 3, ¶ 12. Accordingly, 20% of $146,910.38 is $29,382.08 – the precise amount Plaintiff seeks in attorneys' fees. Plaintiff also seeks $395.23 in legal costs, a value certified in an affidavit by Jody Wagner, Senior Vice President and Director of Operations at Meridian. Jody Wagner Cert., ECF 23 at 4, ¶ 12. I find Ms. Wagner's affidavit credible and accept her representation of costs due.

Judgment will therefore be entered in the total amount of $176,760.37, the sum of the balance due, attorneys' fees, and costs.[3]

### IV. Liability of Abraham Woods, III, M.D., PA

Separately pending is a request to enter default judgment against Dr. Woods's professional corporation, which signed a Guaranty identical to the one that Dr. Woods signed in his individual capacity. Req. for Default J., ECF 37. That request has been pending since August 21, 2025. The same reasoning that mandates summary judgment as to Dr. Woods applies with equal force to his professional corporation. Accordingly, the order to be entered will also enter judgment against that entity.

---

[3] In entering default judgment against RTC, I also previously determined that, pursuant to the Agreement's plain terms and supportive accounting, Plaintiff is entitled to $176,687.69. *See* Default J. Order, ECF 28; *see also Farina v. Nokia Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010) ("The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (citation omitted).

**V.      Conclusion**

The purchase of this equipment has proven to be a serious setback for Dr. Woods. But the Agreement explicitly protected Plaintiff from responsibility for any defects in the merchandise it financed. And as is typically the case in loans to professional corporations and medical practices, Plaintiff protected its interests with guaranties. Given the documents that Dr. Woods executed, I am constrained to grant summary judgment in Plaintiff's favor. An appropriate order follows.

/s/ Gerald Austin McHugh<br>
United States District Judge